659 P.2d 155

Charles R. RASMUSSEN and Beryl Rasmussen, husband and wife, Plaintiffs-Respondents,

v.

John S. MARTIN and Patricia Martin, husband and wife; Andmar Farms, a partnership, Defendants-Appellants,

The Federal Land Bank of Spokane and The Idaho First National Bank, Defendants.

No. 13429.

Court of Appeals of Idaho.

Feb. 22, 1983.

**402**

Thomas H. Church, Church, Church, Snow & Tuft, Burley, for defendants-appellants.

Gordon S. Thatcher, Rigby, Thatcher, Andrus, Barton & Walters, Rexburg, for plaintiffs-respondents.

BURNETT, Judge.

Victor Hugo once described life as "a perpetual succession of events, to which man submits." So it must have seemed to the principal parties here. Charles Rasmussen and John Martin entered into a complex series of business transactions, saw their relationship become sour, and then lost important records in a flood. A district court was asked to determine the respective obligations of the parties to each other. The controversy focused upon a joint farming venture and upon a real estate transaction.

With respect to the farming venture, the court found that the parties had settled their mutual obligations. In accordance with the settlement, the court held that Martin was indebted to Rasmussen for a specified sum of money, and that Rasmussen was entitled to proceeds of a contract with a third party. In regard to the real estate transaction, the court determined that Rasmussen owed a continuing obligation to Martin, but held that the obligation was one to perform future services, not to pay a present debt. Martin appealed.[1]

The record is a thicket of obscurities and conflicting evidence. However, when consolidated, the issues on appeal are relatively straightforward. (1) Was there substantial evidence to support the trial court's finding that the parties had settled their obligations relating to the farm venture? (2) Did the judge correctly hold that the obligation owed by Rasmussen to Martin, arising from the real estate transaction, was to provide services rather than to pay money? Because we answer both questions in the af-

---

1. Andmar Farms, shown in the caption as an appellant, claims an interest through Martin in the third-party contract. The banks listed in the caption have asserted no claim or interest germane to the issues on appeal.

firmative, the judgment of the district court will be upheld.

## I

The background facts concerning the farm venture are undisputed. Martin, a farm owner, leased a parcel of irrigated ground to Rasmussen in 1974. Rasmussen, who was not a farmer, entered into a "lease back" arrangement with Martin to grow potatoes on the farm. The parties agreed that certain expenses would be divided, that Martin would retain two-thirds of the potatoes grown, that Rasmussen would receive one-third, and that Rasmussen would guarantee the purchase of the other two-thirds from Martin at a price not less than a stated minimum. The agreement further provided for Rasmussen to lease storage space in potato cellars on or near Martin's farm. The parties later supplemented their agreement with an addendum providing, among other things, that Rasmussen furnish Martin 14,000 sacks of certified seed potatoes, and that Martin assign to Rasmussen the future proceeds of a separate contract between Martin and a third party.

In addition to paying expenses defined by the agreement, Rasmussen advanced certain funds for payments on farm equipment used by Martin. Martin also obtained from Rasmussen 4,000 sacks of foundation seed potatoes. As noted below, when disagreement erupted between the parties, they disputed whether these 4,000 sacks were part of the 14,000 sacks which Rasmussen was obliged to provide under the addendum to their agreement.

The parties' relationship began to fray when the potatoes grown on the farm were harvested and stored in the cellars. The district court found that the parties sold some potatoes from each other's shares. Martin became displeased with the terms on which Rasmussen sold certain potatoes in which both parties had shares. Martin also claimed that Rasmussen had not furnished the 14,000 sacks of certified seed potatoes as agreed. Martin informed Rasmussen

that he wanted to discontinue their business relationship. A conference ensued and the parties terminated the farming venture.

What transpired at the conference became the central inquiry in this lawsuit. The parties testified largely from memory, with incomplete documentation. Although the parties had access to their records during the conference, many of the documents subsequently were lost in the Teton Dam flood. Rasmussen asserted that the conference had produced a settlement of the mutual obligations of the parties regarding the farm venture. The manager of a bank where both parties had done business testified that, to his understanding, the parties had made a full and final settlement. As part of the settlement, Rasmussen calculated that Martin owed him $9,615.50 after accounting for all mutual obligations. Martin gave Rasmussen a check for this amount at the conclusion of the conference. However, when Rasmussen presented the check for payment several weeks later, he learned that payment had been stopped.

The district court found that a settlement had occurred, and entered judgment accordingly.[2] In evaluating the fairness of the settlement, the court found that, although Rasmussen had not provided 14,000 sacks of certified seed potatoes, he was the source of 4,000 sacks obtained by Martin, as mentioned above. The court further found that Rasmussen was entitled to credits for funds advanced on the farm equipment and for certain potatoes sold from his share by Martin. The total consideration furnished by Rasmussen was found to equal the value of the third-party contract assigned by Martin, plus the amount of the settlement. Accordingly, the court held that the settlement was neither "unfair [n]or inappropriate under the circumstances."

On appeal, Martin does not challenge the proposition that if two parties settle and compromise their disputed obligations, and if the agreement is neither tainted by duress nor later rescinded, the

---

2. The district court adjusted the recovery from $9,615.50 to $8,715.50, correcting a mathematical error which had been made in computing the amount of the settlement.

settlement is binding upon the parties. This proposition is well established in Idaho law. *E.g., Lomas & Nettleton Co. v. Tiger Enterprises, Inc.,* 99 Idaho 539, 585 P.2d 949 (1978); *Nordling v. Whelchel Mines Co.,* 90 Idaho 213, 409 P.2d 398 (1965). Rather, Martin asserts that the district court erred by finding that the parties had reached such agreement.

■ Generally, the question of whether there was a sufficient meeting of the minds to form an agreement is to be determined by the trier of fact. *E.g., Shields & Co., Inc. v. Green,* 100 Idaho 879, 606 P.2d 983 (1980). Findings of fact by a trial court will not be disturbed on appeal unless they are clearly erroneous. I.R.C.P. 52(a). Clear error, in turn, will not be deemed to exist if the findings are supported by substantial and competent, though conflicting, evidence. *E.g., J.E.T. Development v. Dorsey Const. Co., Inc.,* 102 Idaho 863, 642 P.2d 954 (Ct.App.1982).

■ As noted above, the record discloses that, at the conclusion of the conference between the parties, Martin gave Rasmussen a check but later stopped payment on it. The amount of the check coincided with Rasmussen's computation of the net amount due him. These facts constitute substantial evidence that a settlement in fact occurred.

Martin urges that the district court, in finding a settlement, disregarded other competent evidence in the record. He points, first, to testimony by both parties that Rasmussen did not voluntarily provide 4,000 sacks of seed potatoes in partial fulfillment of his obligation to furnish 14,000 sacks. Rather, the testimony showed that Martin "appropriated" 4,000 sacks which Rasmussen had kept in storage. In our view, this fact by itself would not affect Rasmussen's right to receive a credit for those seed potatoes; and it does not disprove the existence of a settlement embracing such a credit.

However, Martin also invites attention to the fact that Rasmussen recorded a lien on the seed potatoes after the settlement con-ference. From this fact Martin urges an inference that no settlement occurred. In contrast, Rasmussen testified that, as part of the settlement, Martin had agreed to obtain a release from a bank of any interest it might have in the third-party contract assigned to Rasmussen. Martin did not obtain the release promptly after the conference, according to Rasmussen, so the lien was recorded to prevent Martin from breaching the settlement agreement and failing to account for the seed potatoes. When Martin later obtained the bank's release on the third-party contract, Rasmussen also released his lien.

■ Rasmussen's testimony in this regard was not inherently incredible. By finding that a settlement had occurred, the district court implicitly decided to believe Rasmussen. We will not disturb this determination. The credibility of a witness who testifies in open court is for the trier of fact to determine. I.R.C.P. 52(a); *e.g., Lawyers Title Co. of Idaho v. Jacobs,* 102 Idaho 804, 641 P.2d 350 (Ct.App.1982).

■ Martin next urges that he and Rasmussen did not agree for Rasmussen to keep the assigned third-party contract, because Rasmussen had not in fact provided Martin 14,000 sacks of certified seed potatoes as required by the addendum to the original agreement. This contention makes it necessary to examine the addendum more closely. The addendum stated, in pertinent part, that the assigned third-party contract was deemed to have the same value as 14,000 sacks of certified seed potatoes. The addendum recited that the seed potatoes were worth $84,000. This figure was used later in computing the settlement. Rasmussen furnished total consideration, found by the district court to be worth more than $84,000, in the form of 4,000 sacks of seed potatoes plus credits for funds advanced on farm equipment and for Martin's sale of some of Rasmussen's potatoes. Although this mode of performance by Rasmussen was not what the addendum provided, it was of greater value; and Martin was at liberty to settle for it. A party may agree to accept performance different in form

from that recited in a contract. *See Conklin v. Patterson,* 85 Idaho 331, 379 P.2d 428 (1963). The district court implicitly determined that this occurred in the present case.

■ Finally, Martin asserts that he did not agree to the settlement because Rasmussen actually owed *him* money. He contends that Rasmussen failed to pay certain potato processing, certification and insurance costs as provided in the original agreement. However, Rasmussen testified that he did pay for some of these disputed items, and that he gave Martin additional potatoes to cover the remaining expenses. Rasmussen also maintained that the settlement between the parties had covered every obligation relating to the farm venture, including the items claimed by Martin. The trial court's finding of a settlement was based largely upon Rasmussen's testimony. As noted previously, we will not disturb the court's determination of credibility. In any event, where evidence is conflicting, the task of weighing such evidence falls within the province of the trial court. *E.g., Angleton v. Angleton,* 84 Idaho 184, 370 P.2d 788 (1962).

We conclude that the district court's finding of a settlement, which extinguished Martin's claims, was not clearly erroneous. Moreover, as noted previously, the court's evaluation of the fairness of the settlement resulted in a determination that the agreed amount of Martin's debt to Rasmussen was consistent with the underlying obligations of the parties. Consequently, it appears that the court could have reached the same result in this case, independent of the settlement. The judgment of the district court, concerning the farm venture, will be upheld.

## II

We now turn to the separate obligation, owed to Martin by Rasmussen, arising from a real estate transaction. In 1968 Rasmussen was a real estate agent associated with a firm known as Rexburg Realty. At that time Rasmussen handled an exchange transaction to which Martin was one of the parties. The exchange contract contained a provision entitling Martin to future brokerage services by Rexburg Realty having a commission value up to $10,000. The contract also gave Rexburg Realty an "exclusive" right to sell property for Martin and recited that the $10,000 entitlement would "be null and void unless the service is used."

Rasmussen later discontinued his association with Rexburg Realty, and moved his real estate business elsewhere. However, upon his departure, Rasmussen assumed the obligation owed to Martin. From that time to the inception of this lawsuit, Rasmussen handled several other real estate transactions for Martin, but was paid full commissions for his services. Rasmussen testified without contradiction that, on each occasion, Martin chose to defer his $10,000 credit and executed closing instruments providing for payment of the commissions charged. Rasmussen acknowledged a continuing obligation to Martin, and testified that he remained ready and willing to perform services upon request. Martin contended that the obligation should be treated as a debt for $10,000, payable immediately. The district court declined to so hold. The court likened the $10,000 entitlement to an "option" which Martin had not yet exercised.

■ On appeal, we are not asked to review the validity of the exclusive right to sell Martin's property, ostensibly conferred upon Rexburg Realty by the exchange contract. Neither are we requested to determine Martin's rights under the exchange contract if, for reasons beyond his control, the contemplated services are not performed. Rather, the narrow issue before us is whether an obligation to provide future services, upon request, should be treated as a present debt for money.

■ Martin has cited no authority for treating a service obligation as a money debt; and we have found none. Of course, if a service obligation is breached, the aggrieved party may have a remedy in monetary damages. *McCandless v. Schick,* 85 Idaho 509, 380 P.2d 893 (1963). Such a

breach could consist of failure to perform the required service with due diligence. *E.g., Navajo Freight Lines, Inc. v. Moore,* 170 Colo. 539, 463 P.2d 460 (1970). But no breach was proven in his case. Martin did not show that Rasmussen ever refused to provide services or to allow a $10,000 credit, upon a timely request.

■ In his brief on appeal, Martin's counsel argues that the relationship between the parties has so deteriorated that they "are unable to trust each other." We are urged to recognize this "obvious reality," and to hold that the intent of the exchange agreement will be defeated if Martin must engage Rasmussen's services in order to realize the value of his $10,000 entitlement. As a general rule, relief from a provision of a contract, in order to avoid frustration of the contract's underlying purpose, will not be granted where the claimed grounds of frustration are merely personal to one of the parties. The frustration must be objective, rather than subjective, in nature. *See generally* J. Calamari & J. Perillo, Contracts § 13–12 (2d ed. 1977). In this case, the record does not contain a showing of objective frustration. The district court did not find that Rasmussen was untrustworthy. Neither did Martin undertake to show that bitterness over the instant case necessarily would interfere with a future sale of property through Rasmussen's existing real estate firm. Upon this record, we sustain the district court's ruling that Rasmussen's obligation to provide future services should not be treated as a present debt.

The judgment of the district court is affirmed. Costs, but no attorney fees, to respondents Rasmussen.

WALTERS, C.J., and SWANSTROM, J., concur.