705 P.2d 1056

**Frances McDONALD, Plaintiff-Appellant, Cross Respondent,**

**v.**

**Kimber Ray BARLOW, Defendant-Respondent, Cross Appellant.**

**No. 14406.**

Court of Appeals of Idaho.

Sept. 3, 1985.

John C. Hepworth (argued) and John T. Lezamiz, Hepworth, Nungester & Felton, Twin Falls, for plaintiff-appellant, cross respondent.

Roger D. Ling (argued) and Steven Ross, Ling, Nielsen & Robinson, Rupert, for defendant-respondent, cross-appellant.

## ON REHEARING

This opinion supercedes our prior opinion issued January 24, 1985, which is hereby withdrawn.

WALTERS, Chief Justice.

Several months after a divorce decree had been entered, Frances McDonald commenced an independent action against her former husband, Kimber Ray Barlow. McDonald alleged that Barlow had fraudulently misrepresented during property settlement negotiations leading to the divorce the status and value of his interest in a trust. By an amended complaint, McDonald further alleged that income generated by the trust was community property not mentioned in or affected by the property settlement agreement or subsequent divorce decree. Following trial in the independent action, the district court entered judgment for $30,890.70 plus interest and certain costs on behalf of McDonald—an amount far less than she sought. On appeal, McDonald maintains the trial court correctly determined she was entitled to bring this independent action, but incorrectly concluded she had no right to share in distributions made after the parties were divorced. Barlow disputes the propriety of the independent action and, in his cross-appeal, argues issues we need discuss only if we conclude the independent action was proper. Because we hold that McDonald was barred from bringing this independent suit, we do not discuss the other issues raised.

Frances McDonald married Ray Barlow in March, 1947. When his mother died in 1951, Barlow received by devise forty percent of his mother's one-half interest in the community property owned by his parents. The net value of the bequest, which amounted to a twenty percent interest in certain properties, was $67,273.82 in 1951. By far the most valuable portion of the bequest was corporate stock in two ranching operations—K.C. Barlow, Inc., and K.C. Barlow Ranch, Inc.—which were controlled and managed by Barlow's father. In 1963, the Barlows transferred all interest they had in the ranching operations (including the interest owned by Ray Barlow that he had received from his mother's estate) to a master trust administered by the United States National Bank of Oregon. In exchange for transferring his twenty percent interest to the master trust, Ray Barlow was to receive thirty percent of the value of the trust when the trust property was distributed. Hereinafter we will refer to Barlow's thirty percent interest in the master trust as the "trust interest." Distributions of Barlow's share from the master trust were to be made to the K. Ray Barlow individual trust. Although Barlow could exercise no control over the trustee administering the master trust, he could compel distributions from the individual trust. McDonald participated in executing the master trust in 1963.

By the terms of the master trust, the elder Mr. Barlow was given a life estate in the trust assets. Also, upon his death, the master trust would become irrevocable.

The elder Mr. Barlow died in December, 1964. Prior to his death, however, the corporation, K.C. Barlow, Inc., was liquidated and, in March, 1964, that corporation was dissolved. Its remaining assets were transferred to the master trust. In July, 1964, the assets of K.C. Barlow Ranch, Inc. were sold. That corporation however, continued in existence until 1977, when it was dissolved and the balance of its assets were transferred to the master trust. From 1966 until 1977, K.C. Barlow Ranch, Inc. declared dividends to the master trust in various amounts.

McDonald and Barlow separated in 1976 and were divorced on September 2, 1977. Property settlement negotiations occurred during the separation. McDonald was rep-

resented by able counsel during the negotiations, and she also enlisted the advice of a friend who was a prominent local business man. McDonald, her attorney, and her advisor all knew the master trust existed, but Barlow and his attorney maintained during the property settlement negotiations that Barlow's trust interest was not vested, that no distributions had been made from the master trust, and that, in any event, the trust interest was Barlow's separate property. McDonald made no independent inquiries nor did she compel discovery regarding the trust. The property settlement agreement reached in August, 1977, in which McDonald relinquished all claims to the trust, was merged into the September divorce decree.

Sometime after the divorce decree was entered, McDonald discovered that Barlow had received, through the individual trust, substantial distributions from the master trust. One distribution of $160,714.00 was received in December, 1976 while McDonald and Barlow were separated but still married. Distributions in 1977 after the divorce decree and in 1978 and 1979 brought the total received by Barlow from the trust to $475,368.61.

McDonald commenced this suit independent of the divorce proceedings on July 17, 1978, claiming she was entitled to one-half of all trust distributions received by Barlow. Following a bench trial, the judge entered findings of fact and conclusions of law as required by I.R.C.P. 52(a). The judge found that neither Barlow nor his attorney misrepresented any facts in regard to separate or community property of the parties and that in negotiating the property settlement agreement, McDonald did not rely on Barlow or his representations, but relied upon independent advice from her attorney and from her financial consultant. The court concluded there was no fraud on the part of Barlow in regard to the property settlement agreement or in obtaining the divorce judgment. However,

after concluding that the divorce action did not preclude the independent action on principles of res judicata, the trial judge held that McDonald was entitled to a portion of the trust distributions made while the parties were still married, but that she had no right to share in distributions following entry of the divorce decree.[1]

■ Generally, a judgment entered is res judicata with respect to all issues which were or could have been litigated. *Compton v. Compton*, 101 Idaho 328, 612 P.2d 1175 (1980); *Aldape v. Akins*, 105 Idaho 254, 668 P.2d 130 (Ct.App.1983). By preventing multiple litigation of the same claim, the doctrine of res judicata furthers important fundamental purposes. The doctrine preserves the acceptability of judicial dispute resolution by preventing inconsistent results; it serves the public interest in protecting the courts against the burdens of repetitious litigation; and it advances the private interest in repose from the harassment of repetitive claims. *Aldape v. Akins, supra*. In limited circumstances, however, relief from a judgment may be obtained in an equitable independent action. *See* I.R.C.P. 60(b); *Compton v. Compton, supra*. In such instances, the policies furthered by granting relief from the judgment outweigh the purposes of res judicata.

■ As is the case at bar, *Compton* was an independent equitable action brought by the wife seeking relief from the property division portion of a divorce decree. In discussing the burden borne by one who seeks such equitable relief, our Supreme Court stated:

[T]he independent action in equity is a most unusual remedy, available only rarely and under the most exceptional circumstances. It is most certainly not its function to relitigate issues determined in another action between the same parties, or to remedy the inadvertence or oversight of one of the parties to

1. In amended findings and conclusions, the judge increased the initial award to McDonald by $9,876.21, representing her community interest share of the portion of the 1977 distribution earned while the parties were still married.

the original action. It will lie only in the presence of an extreme degree of fraud. 101 Idaho at 335, 612 P.2d at 1182. Accordingly, McDonald had the burden "to allege such fraud as to support an independent action for relief from judgment." *Compton,* 101 Idaho at 336, 612 P.2d at 1183. Without the existence of the requisite fraud, an independent action in equity may not be brought. Instead, res judicata prevails.

In evaluating the degree of fraud demonstrated by particular facts, we must assess the nature of the relationship between the parties who are alleged to have acted fraudulently as well as the character of the actual conduct involved. *Compton v. Compton, supra.* Throughout the property settlement negotiations, the relationship between McDonald and Barlow was that of husband and wife. The fiduciary duty arising from that relationship was not affected by the parties' separation. *Id.* Thus, during the property settlement negotiations, the fiduciary duty required,

> at least, a disclosure by both parties of all information within their knowledge regarding the existence of community property and of pertinent facts necessary to arrive at a reasonable valuation of the property. Like a business partner, each spouse is free to adopt a position favorable to himself or herself regarding the property's valuation, its inclusion in the community, or other such issues. They are not free, however, to resolve such issues unilaterally by concealing the very existence of particular items or amounts of property.

101 Idaho at 336, 612 P.2d at 1183.

With this understanding of McDonald's and Barlow's fiduciary duty to each other in mind, we turn to an analysis of the conduct in this case to determine whether it presents fraud in such degree as to support an independent action for relief from judgment. According to *Compton,* it is appropriate to consider McDonald's diligence in challenging Barlow's representations regarding the master trust as well as the erroneous or misleading nature of the representations themselves. The record indicates that Barlow maintained throughout the negotiations that his trust interest, and any income or proceeds distributed by the trust, were his separate property. His position that the trust interest should not be included in the community was not, according to *Compton,* a breach of his fiduciary duty to McDonald. Nor did he breach his duty by misstating the value of the trust interest. The record also demonstrates a distinct absence of diligence by McDonald in challenging Barlow's representations regarding the trust. McDonald made no effort to compel discovery of the terms of the trust, nor did she challenge Barlow's valuation of the trust interest or his classification of it as separate property. "Her inadvertence or misjudgment in failing to do so when the opportunity was ripe is an excellent example of the type of conduct which the independent action to relieve a party from judgment will not lie to correct." *Compton v. Compton,* 101 Idaho at 337, 612 P.2d at 1184. Because McDonald failed to demonstrate the existence of fraud sufficient to support an independent action for relief from judgment, the trial court erred by modifying the property settlement agreement merged into the divorce decree. *See Compton v. Compton, supra,* and *Paul v. Paul,* 97 Idaho 889, 556 P.2d 365 (1976).

McDonald argues, however, that this suit independent of the divorce action is not affected by the divorce decree because the property at issue was not contemplated when the property settlement agreement was negotiated. Because the settlement and subsequent decree treated the trust interest as Barlow's separate property, McDonald asserts the community interest in the trust was not affected. Thus, McDonald argues, the parties became tenants in common as to the community portion of the trust because the divorce decree failed to divide the community interest, and an independent action may be brought to divide the property. We are not presuaded. Although in some circumstances an independent action will lie to divide

community property not disposed of in a divorce decree, *Quinlan v. Pearson,* 71 Idaho 26, 225 P.2d 455 (1950), application of that rule is not appropriate under the facts in this case. The property settlement agreement between the parties provided in part:

> The wife waives any and all claims against the separate property of the husband, including his interest in a Trust at the U.S. National Bank of Oregon and any proceeds therefrom.

The trial court construed this provision by holding that the agreement waived any right the wife might have in the husband's separate interest in the trust but she did not waive any claim to any interest that *she* might have in the trust. The court then held that the December 30, 1976, distribution was community property—not the husband's separate property—and, after deducting a portion allocated to discharge of community obligations, awarded one-half of the net amount to the wife.

We believe the trial court's construction of the agreement ignores the clear implication of the words "and any proceeds therefrom." It is undisputed that the trust was established at its inception with the separate property of the husband, together with other property owned by persons other than Barlow and McDonald. Subsequently, any income in the trust estate was acquired by the trust, not by Barlow. *See Matter of Marriage of Burns,* 573 S.W.2d 555 (Tex.Civ.App.1978). By the property settlement agreement, the wife waived any claim to the proceeds of the trust *res,* whether those proceeds arguably might be otherwise characterized as community property, separate property, or a mixture of both in a situation where the proceeds result from property which is not held in trust.

The entire trust interest was therefore assigned to Barlow in the property settlement agreement and in the divorce decree. McDonald had ample opportunity to challenge Barlow's valuation and classification of the trust interest as separate property in the divorce action. She did not contest the status of the trust in that proceeding. Accordingly, we hold this independent action was barred by res judicata and the trial court erred in treating any part of the trust distribution as property not disposed of in the divorce decree.

The judgment of the trial court is reversed. This case is remanded with direction to the district court to dismiss the action on the basis of res judicata. No attorney fees on appeal, costs to respondent cross-appellant, Barlow.

SWANSTROM, J., concurs.

BURNETT, Judge, dissenting.

I respectfully depart from my colleagues' view of this case on three points. First, I believe the property settlement agreement has a plain meaning with respect to the wife's waiver of any claim against the trust funds. Second, I believe the majority has enunciated an unnecessarily restrictive standard governing the availability of equitable relief from a judgment procured by fraud. Third, and finally, I believe the majority opinion fails to examine the fraud issue in sufficient detail.

Before addressing each point, it is important to recall what is at stake in this litigation. During the marriage the husband inherited from his mother an interest in income-generating corporate stock and real estate. He later transferred this interest to a master family trust created by his father.[1] The master trust, administered by an institutional trustee, was surrounded by a satellite group of individual trusts for beneficiaries in the family. The beneficiaries had unrestricted access to any funds deposited in their individual trust accounts

---

1. The majority deems it undisputed that the interest transferred was entirely the husband's separate property. For the sake of discussion I will presume likewise. However, I note that several years elapsed between the mother's death and the transfer of assets into the trust. If the assets had grown during this period by reinvesting income that the husband was entitled to receive, the assets might have acquired a partially community character.

but they had no power to compel distributions from the master trust.

For many years, the institutional trustee managed the assets of the master trust without making distributions. The master trust received dividends on the corporate shares and eventually received liquidating distributions when the corporations were dissolved. The master trust also received interest income from installment sales of the real estate and from the trust's reinvestment of its own funds. In December, 1976, while the parties in this case were separated but still married, the master trust distributed approximately $160,000 to the husband's individual trust account. Several other distributions after the divorce brought the total to more than $475,-000. The wife received none of this money. She now claims part of it, but the husband maintains that he is entitled to keep it all.

At times pertinent to this case, I.C. § 32–906 provided, with exceptions not applicable here, that the "rents and profits" of separate property are community property. (The statute today simply provides that the "income of all property, separate or community, is community property....") The wife has contended that the master trust distributions included "rents and profits" and therefore comprised, at least in part, community property. The husband has responded that the wife waived any claim to such distributions when she signed the property settlement agreement and that the divorce decree has the preclusive effect of res judicata.

I

The first issue is waiver. The property settlement agreement provides as follows:

> The wife waives any and all claims against the separate property of the husband, including his interest in a Trust at the U.S. National Bank of Oregon and any proceeds therefrom.

The district court held that this language does not contain a waiver. The majority's decision today insists that it does. I agree with the majority's conclusion, although not with its reasoning.

The district court found that when the husband and wife signed the property settlement agreement, they intended to dispose of community and separate interests in all of their property. However, the court held that the agreement failed to accomplish this purpose. Noting that the agreement referred only to "his" (the husband's) interest in the trust, the court ruled that the wife "did not waive her claims to *her* interest in the specified trust." (Emphasis original.) I think the district court has burdened the pronoun "his" with a weight it cannot carry against the context and plain meaning of the entire sentence in which it appears. The sentence, in my view, clearly declares that the "Trust" is the husband's separate property and that the wife waives any claim against it.

The majority opinion, apparently eschewing this holistic approach, fixes upon yet another isolated part of the sentence—the phrase "and any proceeds therefrom." The majority seems to suggest that if "his interest in a Trust" refers only to the husband's separate property, the words "proceeds therefrom" broaden the waiver to include any community property. But the "proceeds" of property retain the same community or separate character as the property itself. I.C. § 32–903; *see, e.g., Travelers Insurance Co. v. Johnson,* 97 Idaho 336, 544 P.2d 294 (1975). The term "proceeds" designates a form of property, implying nothing as to its character. Consequently, the phrase "proceeds therefrom" neither broadens nor narrows the language preceding it as far as the community or separate character of the trust assets is concerned. By focusing on the term "proceeds" the majority simply begs the question of whether the wife waived her claim of a community interest in the underlying trust assets.

In any event, because I think the quoted language as a whole contains a plain expression of waiver, I join the majority's ultimate conclusion that the property settlement agreement disposed of any claim by the wife against the trust funds. The next question is whether the wife is enti-

tled to equitable relief from the agreement and from the decree incorporating it.

## II

The majority correctly notes that when a former spouse seeks by a separate action to obtain relief from a divorce decree, the principles of equity and res judicata are placed in conflict. In *Aldape v. Akins*, 105 Idaho 254, 668 P.2d 130 (Ct.App.1983), we adopted the claim preclusion component of res judicata as set forth in the RESTATE-MENT (SECOND) OF JUDGMENTS (1982) (herein cited as the *Second Restatement*). Relying upon *Second Restatement* § 19, we held that a valid and final personal judgment bars another action on the same claim. Citing *Second Restatement* §§ 24 and 25, we further held that the concept of a claim is sufficiently broad to include evidence or theories which were not, but could have been, presented in the first action. In the case before us, the wife has presented evidence and a theory concerning the trust assets that could have been presented in the original divorce action.

On the other hand, equity long has recognized that when a judgment is the product of a fraud, it may be set aside. In *Compton v. Compton*, 101 Idaho 328, 612 P.2d 1175 (1980), our Supreme Court surveyed the development of equitable remedies. The Court cited numerous case decisions and treatises, which need not be listed again here, supporting the proposition that upon a sufficient showing of fraud, the interests of res judicata will yield to the interests of equity.[2] The *Second Restatement* also embodies this view. Section 70 of the *Second Restatement* provides that "a judgment in a contested action may be avoided if the judgment ... [w]as based on a claim that the party obtaining the judgment knew to be fraudulent."

However, the majority opinion does not apply this straightforward legal standard for obtaining equitable relief. Rather, the majority seeks to narrow the availability of

relief by quoting a dictum from *Compton* and by treating it as a more rigorous standard than that contained in the *Second Restatement*. The dictum appears in the following passage:

> Among the non-conclusory points we can make are that the independent action in equity is a most unusual remedy, available only rarely and under the most exceptionable circumstances. It is most certainly not its function to relitigate issues determined in another action between the same parties or to remedy the inadvertence or oversight of one of the parties to the original action. It will lie only in the presence of an *extreme degree of fraud*.

101 Idaho at 335, 612 P.2d at 1182 (emphasis added).

Of course, no one would quarrel with the observations that an independent action in equity is available only in exceptional circumstances and that it is not a remedy for mere inadvertence or oversight. Indeed, as we shall see, the section of *Second Restatement* pertinent here requires a clear showing of fraud. On the other hand, no legitimate interest in protecting the finality of judgments requires us to say that relief is available only if the proven fraud is "of an extreme degree." Fraud is fraud. Nothing is gained, and much confusion may be created, by suggesting that the courts will disregard some frauds while deeming others worthy of relief. I believe the instant case should be examined for simple fraud, as envisioned by the *Second Restatement*.

## III

Section 70 of the *Second Restatement* provides that a party seeking relief must:

(a) Have acted with due diligence in discovering the facts constituting the basis for relief;

(b) Assert his claim for relief from the judgment with such particularity as to indicate it is well founded and prove the

---

2. Another useful summary of authorities, including *Compton* itself, appears in Sharp, *Fairness Standards and Separation Agreements: A*

*Word of Caution on Contractual Freedom,* 132 U.PA.L.REV. 1399 (1984).

allegations by clear and convincing evidence; and

(c) When his claim is based on falsity of the evidence on which the judgment was based, show that he had made a reasonable effort in the original action to ascertain the truth of the matter.

Comment d to section 70 further explains these requirements and breaks them into four elements required for relief from fraud:

First, it must be shown that the fabrication or concealment was a material basis for the judgment and was not merely cumulative or relevant only to a peripheral issue. Second, the party seeking relief must show that he adequately pursued means for discovering the truth available to him in the original action. * * *

Third, the applicant must show due diligence after judgment, in that he discovered the fraud as soon as might reasonably have been expected. * * *

Finally, the party seeking relief must demonstrate, before being allowed to present his case, that he has a substantial case to present, and must offer clear and convincing proof to establish that the evidence underlying the judgment was indeed fabricated or concealed. This heavy burden of proof is an important measure of protection against attacks on honestly procured judgments. It also transforms the issue from a retrial of a question previously litigated to a search for something approaching incontestable proof as to the truth of the underlying matter in issue.

The first requirement, that the concealment must be material to the judgment, invokes the wife's theory of entitlement to a share in the trust distributions. As noted earlier, the wife has claimed that the distributions contained "rents and profits" constituting community property. The district court adopted this theory, but applied it only to the pre-decree distribution. The court apparently relied, by analogy, upon *Simplot v. Simplot*, 96 Idaho 239, 526 P.2d 844 (1974), and *Speer v. Quinlan*, 96 Idaho 119, 525 P.2d 314 (1974). In those cases our Supreme Court held that the earnings of a corporation, in which a husband held shares as his separate property, did not represent "rents and profits" if they were retained by the corporation for legitimate business reasons rather than being distributed to a spouse-shareholder. The Supreme Court reasoned that to postulate a community interest in retained corporate earnings, and to require satisfaction of such an interest in a divorce, would be tantamount to compelling the corporation to declare a dividend to which the shareholder would not otherwise have been entitled. In the present appeal the wife has attacked the *Simplot-Speer* analogy, arguing that the beneficiary of a trust, unlike a corporate shareholder, has a vested and enforceable, albeit future, interest in the undistributed trust assets. Accordingly, she claims a community interest in all distributions, whenever made.

It is unnecessary, in this opinion, to discuss the validity of the wife's theory of broader recovery. It is sufficient under section 70, comment d, that concealment of the pre-decree distribution was material to the property settlement agreement and to the decree. Had the distribution been timely disclosed, the wife—even if limited by the *Simplot-Speer* analogy—would have been entitled to her share of any "rents and profits" contained in that distribution. The allocation of community property in the settlement agreement and decree would have been significantly affected.

For reasons to become apparent later, I will defer for a moment a discussion of the second requirement under comment d— that a party seeking relief from a fraudulently obtained judgment must have pursued available means for discovering the truth during the original action. As to the third requirement, that of due diligence after judgment, the district court made no findings. Neither has this requirement been argued as an issue on appeal. Consequently, it need not be discussed further.

The fourth requirement relates to proof of the fraud. As noted by the majority, the

district court found that the husband had not "misrepresented" the assets in the trust. The court concluded that the husband had engaged in no fraud. However, it is undisputed that the wife and her attorney inquired about trust distributions while the divorce was pending and that neither the husband nor his attorney communicated the existence of the pre-decree distribution. Indeed, the husband was asked at trial in this case whether he had disclosed the pre-decree distribution to his wife, to her attorney, to anyone else representing his wife, or even to his own attorney. He replied that he had informed his accountant, "[b]ut those people that you enumerated, no."

Nevertheless, as mentioned, the district court concluded that there had been no fraud. The only findings of fact arguably supportive of that conclusion are a finding that the wife received a computer printout from the institutional trustee showing the existence of the pre-decree distribution and a finding that the wife received from the accountant a copy of an income tax return showing the distribution. But even if these findings were correct, they would not necessarily lead to the conclusion that the husband's conduct was free from fraud. It has long been recognized that a fraudulent misrepresentation is not alleviated by the availability of other, truthful sources of information. Only if the recipient of the fraudulent information undertakes and relies upon his or her own independent investigation is the taint of fraud removed. *See generally* Annot., 61 A.L.R. 492, 514, 537 (1929) (collecting cases relating to sales of personal property). Moreover, the district court's findings regarding the printout and tax return are binding on appeal if, but only if, they are supported by substantial evidence in the record. *E.g., Rasmussen v. Martin,* 104 Idaho 401, 659 P.2d 155 (Ct. App.1983). I now turn to the evidence.

The printout was a multi-page document. On its sixth page, according to testimony in the present case, it contained an entry to the following effect: "TRF to 4–08909– .... K. Ray Barlow trusts share of cash in this partial distribution. Tax Code 94.

Disbursed $143,268.96." The printout arrived in the mail at the family home after the husband had moved away. The envelope was addressed to both the husband and the wife. The wife opened the envelope and, being unable to decipher the meaning of the printout, asked a financial adviser to help her. When the adviser could not interpret it either, they took it to the wife's attorney. The attorney examined it but could not discern anything contrary to the husband's earlier representation about the status of the master trust. The attorney asked a second lawyer in his office, the holder of a tax degree, to examine the printout. This individual was similarly unable to find anything significant in the document. In the presence of the wife and her financial adviser, the attorney also called the husband's attorney and asked him what the printout signified. According to the wife's attorney, the husband's attorney responded that the printout merely showed internal operations of the master trust. The husband's attorney later testified, "I have no recollection that such a conversation occurred. And by that, I am not saying that it did or did not. I just simply don't recall anything about it." In my view, the foregoing summary of the record does not reveal "substantial" evidence that the wife or her attorney were meaningfully informed of a distribution from the master trust to the husband's individual trust, where he would have full control over the money.

The tax return was prepared in 1977. It related to income received by both spouses during 1976. The pre-decree distribution was received by the husband in December, 1976. The tax return filed with the U.S. Internal Revenue Service did, in fact, refer to trust distributions received by the husband. However, the wife testified, contrary to the judge's finding, that she did not see a copy of the completed return, with trust information included, until 1980, several years after the decree of divorce was entered.

The accountant testified that on or before April 13, 1977, Mrs. Barlow brought

him information concerning her earnings during 1976. A tax return was prepared by April 13. It was not customary for the accountant to have clients sign returns unless they were completed. However, in this case, two returns were prepared. After the first return had been completed, the husband came to the office on April 14 with information not previously furnished. This information concerned the trust distribution. The accountant then prepared a second return, incorporating some pages from the first return. The accountant testified that he did not know when the wife received a copy of this second, completed return. The wife's attorney testified that the wife did not provide, and he did not otherwise obtain, a copy of the ultimate 1976 joint tax return before the divorce decree was entered. This testimony, as I view it, does not comprise "substantial" evidence that the wife or her attorney actually received, prior to the decree, a completed tax return showing the receipt of a trust distribution by the husband.

To be sure, an appellate court, when examining the record to determine whether a judge's findings are supported by "substantial" evidence, must give due regard to the judge's unique opportunity to observe the demeanor, and to evaluate the credibility, of witnesses. I.R.C.P. 52(a); *Church v. Roemer,* 94 Idaho 782, 498 P.2d 1255 (1972). However, in this case, the trial judge made no findings or other comments in the record concerning the credibility of witnesses. Upon the present record I would hold that the judge's findings regarding the wife's purported knowledge of the trust distributions prior to the decree were not supported by "substantial" evidence. Consequently, they do not support the court's ultimate conclusion on the issue of fraud.

I now return to the second requirement for equitable relief—that the applicant must have "adequately pursued means for discovering the truth available to him in the original action." In my view, this requirement calls for a balancing decision to be made by the trial judge. Comment d to section 70 identifies the appropriate criteria:

> Under modern procedure in trial courts of general jurisdiction in cases involving substantial stakes, abundant devices exist for discovering an opposing party's proof and subjecting it to investigation prior to trial and adequate incentive usually exists to use such devices. Hence, in such circumstances, only a well concealed or unforeseeable fraud is likely to survive a reasonably diligent effort to ascertain the truth. On the other hand, in cases involving limited stakes, it may be unreasonably costly to pursue intensive discovery or investigation when there is no indication that the other side may offer fabricated evidence. Furthermore, in some situations a litigant is entitled to be passive and unquestioning with respect to the proofs of another party. Thus, the cases allowing relief from fraud practiced by a trustee often advert to the fact that a beneficiary should not have to anticipate a trustee's deliberate falsification of the accounts he presents to the court.

In this case, the district court engaged in no weighing of such factors nor did the judge make any ultimate determination concerning the reasonableness of efforts by the wife and her attorney to ascertain the truth about trust distributions. Of course, through discovery the wife's attorney could have probed beneath the surface of general information received from the husband and his attorney concerning the nature of the trust and the reported lack of any distributions. However, the husband owed a fiduciary duty of disclosure to his wife, and the wife's attorney felt he could rely upon information furnished by the reputable attorney representing the husband. Moreover, the wife's attorney testified:

> [The wife] was a school teacher, and ... she had, of course, a pension income from the State of Idaho, being a teacher, which had been depleted. She had a son living with her. She had an old Toronado automobile. She did not have any particular disposable income. Money was important to [her].

... I indicated to [her] ... that we could engage in extensive discovery, but that I had no reason not to believe [the husband's attorney]; [I] thought that our discovery would produce exactly what [he] told me, and did not think that spending huge quantities of her money was going to generate anything, except a bill from me.

The question, then, is how these competing factors should have been balanced. Where, as here, a trial court has failed to make its decision by reference to the proper criteria, the correct appellate response is to remand the case. But the majority, instead of recognizing the competing factors to be weighed, simply declares, as though it were a question of undisputed fact, that the record "demonstrates a distinct absence of diligence" by the wife in challenging the husband's representations regarding the trust. Not only does this declaration usurp the district court's role but it is misguided to the extent that it criticizes the wife's failure to challenge what the majority calls the husband's "valuation of the trust interest or his classification of it as separate property." Valuation and classification are not the issues critical to the instant case. Rather, the critical issue is the husband's failure to disclose the existence of a trust distribution that would have been material to the outcome of the divorce proceedings.

Thus, this case is fundamentally different from *Compton*. There, the Supreme Court, after acknowledging the availability of equitable relief from a fraud, held that the husband had not fraudulently withheld information concerning the existence of assets. Rather, he had simply taken a position—as he is permitted to do—concerning the value and separate character of the assets. In contrast, here the existence of an asset, the pre-decree trust distribution, was withheld. Accordingly, I would vacate the judgment below and remand the case for reconsideration of the availability of equitable relief in light of the criteria enunciated by the *Second Restatement*.