IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 17, 2013 Session

## JEFFREY MATTHEW BROWN v. JENNIFER LINDSEY (WILLIAMS) BROWN

**Direct Appeal from the General Sessions Court for Hardin County**
**No. 6888      Ron E. Harmon, Judge by Interchange**

_____

**No. W2013-00263-COA-R3-CV - Filed September 12, 2013**

_____

J. STEVEN STAFFORD, J., DISSENTING:

For the reasons discussed below, I must respectfully dissent from the majority's opinion in this case.

According to the majority opinion, both Husband and Wife filed Motions for Summary Judgment, essentially agreeing that the undisputed facts established that:

- Husband and Wife entered into an Antenuptial Agreement prior to their marriage that provides that if the parties are married between four and five years, Wife will be entitled to alimony in the amount of $80,000.00. However, the agreement provided that Wife would not be entitled to alimony "if Wife has a sexual affair or commits adultery during the marriage."
- The parties separated in April 2008.
- Husband filed for divorce in May 2008.
- Wife engaged in an affair in or around December 2008.
- During the pendency of the divorce, the parties agreed to forego responding to discovery requests. Accordingly, throughout the pendency of the divorce, Mother was never required to respond to any queries regarding whether she had engaged in an affair during the marriage. As such, Mother never made any assertions directly to Husband, his attorney, or the trial court specifically as to whether she had engaged in an affair.
- The parties entered into a Marital Dissolution Agreement ("MDA") in February 2009. The MDA provided that the parties acknowledged the terms of the Antenuptial Agreement and "agree to be bound by the terms and provisions thereof." The MDA further stated that Wife was to be paid $80,000.00 in alimony "[i]n accordance with"

the terms of the Antenuptial Agreement.

From these events, the majority concludes that Wife "affirmatively represented" to Husband that she was "contractually entitled" to the alimony provided in the Antenuptial Agreement. Essentially, the majority holds that Wife's simple act of signing the MDA, which included the above language, was an affirmative assertion that Wife was both entitled to the $80,000.00 alimony payment and that she had not engaged in an affair during the marriage. Further, the majority concludes that this alleged "affirmative action" constitutes fraud sufficient to justify setting aside the MDA.  I respectfully disagree.

The term "affirmative" is defined as "that which declares positively." ***Black's Law Dictionary*** 55 (5th ed. 1979). Accordingly, for Wife to have taken the affirmative action found by the majority, she must have positively declared that the condition precedent to her receiving the alimony payment, in this case, not having engaged in an affair during the marriage, was met.  The majority cites no authority for its position that Wife's simple act of signing the MDA was such a positive declaration that the condition precedent to the alimony payment had been fulfilled. Respectfully, my own research has revealed no authority that would support the majority's conclusion. If the majority's position is an accurate statement of the law, any settlement in which the parties state that the settlement is pursuant to a prior contract would be seen as an affirmative statement that the parties are not in breach of the contract. It is axiomatic, however, that a party asserting a breach has the burden of proving the other party's breach by a preponderance of the evidence. *See **A.L. Belcher & Associates, L.L.C. v. Harrison***, No. M1998-00965-COA-R3-CV, 2000 WL 666365, at *3 (Tenn. Ct. App. May 23, 2000) (citing ***Tedder v. Raskin***, 728 S.W.2d 343, 351 (Tenn. Ct. App. 1987)). To take a simple agreement to settle the case as an affirmative statement that there is no breach, and then to allow one party to rescind the agreement when new evidence comes to light that the other party did, in fact, breach the contract, relieves the party asserting the breach from their burden to prove it.

In this case, Husband, as the party seeking Rule 60.02 relief, has the burden to prove, by clear and convincing evidence, that Mother committed fraud or misconduct in order to be entitled to relief from the MDA. ***In re Estate of Williams***, No. M2000-02434-COA-R3-CV, 2003 WL 1961805, at *14 (Tenn. Ct. App. April 28, 2003) (perm. app. denied Oct. 6, 2003). In addition, the fraud or misconduct must be of a kind that "prevented the other party from fully and fairly presenting its case." *Id.* at *13. According to this Court, relief is only available when the "conduct affect[ed] the litigation or thwart[ed] the judicial process, with the result that a litigant was prevented from fully and fairly presenting his or her case." *Id.* at *14. There is nothing in the record, however, to suggest that Wife's failure to inform Husband of her affair prevented him from fully litigating this case. Indeed, Father was well within his rights to propound discovery to Wife asking whether Wife had engaged in an

extramarital affair, and to insist that the discovery be answered. Husband failed to take this action.

Although the majority opinion is not specific, as I perceive it, the majority holds that Wife made a fraudulent misrepresentation about her entitlement to alimony by signing the MDA. However, the majority fails to specifically consider whether Husband has met his burden to show that Wife's alleged actions support a finding of fraudulent misrepresentation. In order to establish a claim for fraudulent or intentional misrepresentation, a plaintiff must show the following: (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented fact; and (6) plaintiff suffered damage as a result of the misrepresentation. ***Walker v. Sunrise Pontiac-GMC Truck, Inc.***, 249 S.W.3d 301, 311 (Tenn. 2008). The party alleging fraud bears the burden of proving each element. ***Hiller v. Hailey***, 915 S.W.2d 800, 803 (Tenn. Ct. App. 1995) (quoting ***Williams v. Spinks***, 7 Tenn. App. 488 (1928)).

First, I note that Wife's agreement that she and Husband "agree to be bound by the terms of the MDA," is not a statement of existing or past **fact**, but an agreement to be bound by the provisions of the MDA. This Court has specifically held that a fraudulent misrepresentation claim cannot be based on "representations of future events." ***Cummins v. Opryland Productions***, No. M1998-00934-COA-R3-CV, 2001 WL 219696, at *8 (Tenn. Ct. App. Mar. 7, 2001). Consequently, this statement fails to meet the first requirement for a finding of fraudulent misrepresentation: a misrepresentation of fact. Further, I fail to comprehend how the statement in the MDA that the alimony will be paid "in accordance" with the Antenuptial Agreement is a statement on Wife's part that she has indeed fulfilled the condition precedent to the payment of alimony. The MDA makes no mention of whether Wife had actually complied with the Antenuptial Agreement with regard to the alimony provision, but only states that the payment will be in accordance with the MDA, i.e., that the amount will be paid as stated in the MDA. Accordingly, nothing in the record convinces me that Wife took any other affirmative action to mislead Husband about the existence of her extramarital affair.

Indeed, not even Husband asserts that this case involves an affirmative act by Wife. Instead, Husband states that Wife's breach in this case was her "silence" rather than any affirmative statement. Multiple times in Father's brief, he couches his interpretation of Mother's behavior as "silence," "inaction," "passive non-cooperation," "non-disclosure," and "failure to disclose." Husband even admits that Wife did not "lie to [] Husband or make [an] overt misrepresentation about her sexual affair and adultery." "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her . . . ."

***Sneed v. Bd. of Prof'l Responsibility of Sup.Ct.***, 301 S.W.3d 603, 615 (Tenn. 2010). Additionally, this Court's review is appellate only. *See* Tenn. R. App. P. 13(b) (noting that appellate review "generally will extend only to those issues presented for review"). We are directed only to consider those issues that are properly raised, argued, and supported with relevant authority. *See* ***Hawkins v. Hart***, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001) ("In order for an issue to be considered on appeal, a party must, in his brief, develop the theories or contain authority to support the averred position . . . ."). Husband has neither raised, argued, nor supported the majority's unique interpretation of Wife's behavior in this case. Without any support for its interpretation, I must agree with the parties that this is not the case of an affirmative misrepresentation, but simply involves Wife's failure to disclose her affair.

The resolution of this issue, however, does not end the inquiry because Wife may still be guilty of fraud sufficient to set aside the MDA if she and Husband were engaged in a confidential or fiduciary relationship at the time of the signing of the MDA, as discussed in detail below. This issue, which was the issue that the parties focused on in their briefs and at oral argument, is, in my view, the dispositive issue in this case.

Nondisclosure will give rise to a claim for fraud only when the defendant has a duty to disclose and when the matters not disclosed are material. ***Dobbs v. Guenther***, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1992) (citing ***Gray v. Boyle Inv. Co.***, 803 S.W.2d 678, 683 (Tenn. Ct. App. 1990); ***Piccadilly Square v. Intercontinental Constr. Co.***, 782 S.W.2d 178, 184 (Tenn. Ct. App.1989)). The parties disagree as to whether Wife had a duty to disclose in this case. Husband cites the Tennessee Supreme Court's decision in ***Bratton v. Bratton***, 136 S.W.3d 595 (Tenn. 2004). The ***Bratton*** Court held that parties to a postnuptial agreement have a confidential relationship which gives rise to a duty to disclose:

> Because of the confidential relationship which exists between husband and wife, postnuptial agreements are likewise subjected to close scrutiny by the courts to ensure that they are fair and equitable. *See, e.g.,* ***Peirce v. Peirce***, 994 P.2d 193 (Utah 2000); ***In re Estate of Gab***, 364 N.W.2d 924 (S.D. 1985); ***In re Estate of Harber***, 104 Ariz. 79, 449 P.2d 7 (1969); see also 41 C.J.S. Husband & Wife § 87 (1991) ("Since a husband and wife do not deal at arm's length, a fiduciary duty of the highest degree is imposed in transactions between them."). As explained by the court in ***Estate of Gab***,
>
> > While it is lawful and not against public policy for husband and wife to enter into such contracts, yet

-4-

they are not dealing with each other as strangers at arm's length. The relationship of husband and wife is one of special confidence and trust, requiring the utmost good faith and frankness in their dealings with each other.... Transactions of this character are scrutinized by the courts with great care, to the end that no unjust advantage may be obtained by one over the other by means of any oppression, deception, or fraud. Courts of equity will relieve against any unjust advantage procured by any such means, and less evidence is required in such cases to establish the fraud, oppression, or deception than if the parties had been dealing at arm's length as strangers . . . .

364 N.W.2d at 926 (quoting **Keith v. Keith**, 37 S.D. 132, 156 N.W. 910, 911 (1916)).

*Bratton*, 136 S.W.3d at 601.

Wife argues, however, that the **Bratton** case is distinguishable because it involved a failure to disclose while the parties were still engaged in the marital relationship and were not contemplating a divorce. Indeed, the agreement at issue in **Bratton** was signed by the parties in 1983 and no divorce was filed by the parties until 2000, approximately seventeen years later. This Court has previously declined to extend the confidential relationship to married parties who were engaged in divorce proceedings at the time of the alleged non-disclosure. *See* **Southers v. Southers**, No. 03A01-9802-CV-00001, 1999 WL 333315, at *3–5 (Tenn. Ct. App.1999). In **Southers**, the trial court found that a duty to disclose existed between the parties because they were married at the time of the alleged non-disclosure. *Id.* The trial court relied, at least in part on the decision of this Court in the case of **Howell v. Davis**, 306 S.W.2d 9 (Tenn. Ct. App. 1957), which states that:

"The relation of husband and wife has been regarded as one of special confidence and trust, and in contracting with each other they must exercise the utmost good faith. The court will closely scrutinize all transactions between them to the end that injustice and oppression may not result."

*Id.* at 12. The trial court further cited the opinion in **Lightman v. Magid**, 54 Tenn.App. 701, 394 S.W.2d 151 (Tenn. Ct. App.1965), which stands for the principle:

[t]hat a confidential relationship exists between a prospective husband and wife who execute an antenuptial agreement while they are engaged to be married which requires the utmost good faith and full disclosure of all circumstances materially bearing on the contemplated contract.

*Id.* at 156. According to the Court of Appeals, "[t]he trial court . . . rationalized that if parties negotiating a prenuptial agreement stand in a confidential relationship with one another, then such a relationship must exist between these parties who were married." ***Southers***,, 1999 WL 333315, at *3. The Court of Appeals disagreed, distinguishing the above cases based on the deteriorated relationship between the parties at the time of the alleged non-disclosure. ***Id.*** The Court noted:

> In the instant case, the parties had been separated for over 17 months before the divorce was granted; each had sued the other for divorce; and each was represented by counsel. There is nothing in the record to indicate that they had personally negotiated any aspect of the settlement of the economic issues in this case. On the contrary, all negotiations appear to have been undertaken through counsel and the parties apparently did not even talk to one another after their separation. There is nothing about the relationship between these separated, divorcing, represented-by-counsel parties to suggest that their relationship-contentious as it then obviously was-falls within one of the "three distinct classes" giving rise to a duty to disclose. *See **Justice v. Anderson County***, 955 S.W.2d 613, 616-17 (Tenn. App. 1997). This case is not like ***Howell***. In that case, the court was dealing with a transaction between spouses during an intact marriage. Here, the parties were married in name only, and they were clearly dealing at arms' length, through counsel, with absolutely no trust or confidence reposed by one in the other.
>
> It is important to recognize what this case does not involve. There are no allegations or proof in the record that [h]usband made an affirmative misrepresentation. He apparently was not asked in discovery regarding whether his health condition-about which [w]ife had some, but incomplete, information-had prompted him to consider early disability retirement. This is also not a case where a party hides the existence of a marital asset or otherwise makes an affirmative

> misrepresentation regarding a marital asset-one that amounts to an act of fraud. Obviously, an act of fraud can be the basis for setting aside a negotiated marital dissolution agreement. *See* Rule 60.02(2), Tenn.R.Civ.P.

*Southers*, 1999 WL 333315, at \*3–4. Thus, the Court held that, based on the particular facts of the case, there was no confidential relationship from which a duty to disclose could arise:

> We know of no Tennessee appellate case authority deciding whether, and to what extent, a confidential relationship giving rise to a duty to disclose-as distinguished from a duty not to engage in an affirmative misrepresentation or a duty not to hide marital assets-exists as between divorcing parties. Other states have recognized such a duty under some circumstances. *See **Avriett v. Avriett***, 88 N.C.App. 506, 363 S.E.2d 875, 877 (N.C. App.1988) (holding that the "confidential relationship that usually exists between husband and wife" terminated when they "become adversaries" in the course of negotiating a divorce settlement); ***Eltzroth and Eltzroth***, 67 Or.App. 520, 679 P.2d 1369, 1372 (Or. App. 1984) ("Because the fiduciary duty is imposed as a result of the confidential relationship between the parties, it continues while the parties contemplate divorce, as long as the confidential relationship remains intact and the parties are not dealing at arms' length through separate agents or attorneys."); ***Gabbert v. Johnson***, 632 P.2d 443, 446 (Okla. App. 1981) ("Both parties were represented by able counsel. Once she filed her action, the woman no longer enjoyed a confidential relationship with her husband. He did not have to voluntarily disclose anything."); ***Jeffries v. Jeffries***, 434 N.W.2d 585, 587-88 (S.D. 1989) ("While it is generally true that a husband and wife do enjoy a confidential relationship, . . . we do not believe that such a relationship existed here. When the parties to a marriage are negotiating a property settlement, recognizing that their interests are adverse to one another and that they are dealing at arms [sic] length, neither spouse owes to the other the duty of disclosure which he or she would normally owe if their relationship remained, in fact, a confidential one."). *Cf. **McDonald v. Barlow***, 109 Idaho 101, 705 P.2d 1056, 1060 (Idaho App. 1985) ("Throughout the property settlement negotiations, the relationship between McDonald and Barlow

-7-

was that of husband and wife. The fiduciary duty arising from that relationship was not affected by the parties' separation."). In the instant case, we do not find it necessary to define, by way of a bright-line rule, when the confidential relationship recognized in *Howell* terminates in the context of a divorce. Suffice it to say that it had clearly terminated in this case.

*Southers*,, 1999 WL 333315, at *4; *see also* *Macar v. Macar*, 803 So.2d 707, 711–13 (Fla. 2001) (denying relief from final MDA based on alleged fraudulent non-disclosure, when MDA was agreed to after contentious litigation between the parties had commenced and both parties were given ample opportunity to conduct discovery).

Likewise in this case, the only evidence contained in the record shows that Wife had an affair in or around December 2008. At this time, the parties had been separated for approximately nine months and the divorce complaint had been pending for seven months. Nothing in the record suggests that the parties were not fully and effectively represented by counsel throughout the proceedings. In addition, nothing suggests that Husband was prevented from engaging in full discovery with Wife. Based on the opinion in *Southers*, this situation tends to support a conclusion that the confidential relationship between the parties was extinguished by the time the parties signed the MDA. Further, there is no evidence in the record that Wife engaged in an affair prior to the parties' separation, when the parties would undisputedly be considered to be in a confidential relationship.

The majority bases its decision on the erroneous premise that Wife engaged in affirmative action to misrepresent her fidelity in this case; accordingly, the majority fails to consider the dispositive issue in this case. Because I conclude that Husband failed to meet his burden to prove that Wife committed an affirmative act sufficient to constitute a fraudulent misrepresentation, I would go on to consider whether Wife's failure to disclose her affair was nevertheless a basis for Rule 60.02 relief. Neither the trial court nor the majority opinion consider whether Wife breached a duty to disclose in this case; however, in my view, resolution of this issue is necessary to decide the substantive issue presented in this appeal. Thus, I must respectfully dissent from the majority opinion.

_____
J. STEVEN STAFFORD, JUDGE