422 A.2d 1078

**BERKELEY INN, INC., Appellant,**

v.

**CENTENNIAL INSURANCE COMPANY and Wesley Herbol, Abner McMaster and Evan MacEwen, Individually and d/b/a Herbol, McMaster and MacEwen Insurance Agency.**

Superior Court of Pennsylvania.

Argued Nov. 12, 1979.

Filed Sept. 19, 1980.

Reargument Denied Dec. 24, 1980.

208

John W. English, Sr., Erie, for appellant.

John M. McLaughlin, Erie, for appellees.

Before PRICE, CAVANAUGH and WATKINS, JJ.

PRICE, Judge:

This case arises from a casualty loss sustained by appellant on December 9, 1973, when a building it owned was partially destroyed by fire. At the time of the fire, appellant maintained an insurance policy with appellee Centennial Insurance Company (hereinafter Centennial) which provided coverage of $180,000 for building loss, $40,000 for loss of contents, and $60,000 for business interruption loss. After attempts to reach a total settlement of its claim proved unsuccessful, appellant filed a suit against Centennial contending that the insurance company was contractually liable for the following casualty losses: $148,865.27[1] for building loss; $70,000 for loss of contents; and $60,000 for business interruption loss. Prior to the date the complaint was filed, Centennial paid into the court of common pleas an amount of $181,220, which was designated as a payment of $141,220 for building loss and $40,000 for loss of contents. Centennial's liability on this amount was not contested. The issues in dispute before the court of common pleas were whether: (1) an oral binder existed providing for an additional $30,000 on the contents of the building;[2] (2) appellant sustained a loss

1. Although appellant alleged a building loss of $148,865.27, the trial court awarded no building damage loss in excess of the $141,220 amount paid into the court by Centennial in December of 1974. Apparently, this latter amount represents a previous settlement agreed to by appellant and Centennial, under which appellant reserved the right to litigate its claim for business interruption loss and additional contents coverage. In any event, appellant did not take exception to the trial court's disposition regarding the amount of building loss endured, nor does it dispute that amount on appeal.

2. Appellant also named as defendants Centennial's agents Wesley Herbol, Abner McMaster and Evan MacEwen as individuals and doing business as Herbol, McMaster and MacEwen Insurance Agency, and alleged that in the event Centennial was absolved of liability on the alleged policy for additional contents coverage, its agents

of $60,000 from business interruption; and (3) interest on appellant's claims should be assessed from the date of the fire. A non–jury trial was held before the Honorable Lindley R. McClelland, and it was found that Centennial, through its agent, appellee MacEwen, entered into an oral binder with appellant to provide an additional $20,000 coverage for the contents of the insured building. The court, therefore, awarded appellant an additional $20,000 above the amount previously paid into court by Centennial, with interest on the $20,000 assessed at a rate of six percent per annum calculated from the date of the fire. Additionally, the court found that appellant failed to establish any business interruption loss or even prove that it could have survived financially absent the fire, and the court refused to assess interest on the $181,220 amount appellee paid into the court in 1974. Appellant filed exceptions to the trial court's findings and decision, and the court of common pleas, en banc, denied those exceptions.

On appeal, appellant contends that the trial court erred in finding that it had failed to establish a business interruption loss and in refusing to assess interest on the $181,220 amount from the date of the fire until the date Centennial paid it into the court of common pleas. Although we affirm the judgment of the court of common pleas, we do agree with appellant that interest should have been assessed on the amount Centennial paid into the court, and we therefore modify the judgment by adding interest at the rate of six per cent per annum on the amount of $181,220 for the period of October 21, 1974, through December 16, 1974.

 Generally, business interruption insurance is intended to return to the insured the amount of profit it would have earned had the event insured against not intervened. *See* 44 C.J.S. Insurance § 48; Annot. 83 A.L.R.2d 885; *Eastern Associated Coal Corp. v. Aetna Casualty & Surety Co.*, 475 F.Supp. 586 (W.D.Pa.1979); *Supermarkets Operating Co. v. Arkwright Mutual Insurance Co.*, 257 F.Supp. 273

would be liable for failing to secure the additional coverage requested by appellant.

(E.D.Pa.1966). In assessing liability for a business interruption loss, the previous experience of the business before the fire as well as its probable future experience thereafter must be considered, and as a prerequisite to recovery, the claimant must show an actual monetary loss. *See generally,* Couch on Insurance 2d §§ 79:365, 79:520 (2d ed. 1959).

We note, initially, that it is axiomatic in the law of this Commonwealth that the findings of fact of a trial judge, sitting without a jury, sustained by the court en banc, have the force and effect of a jury's verdict, and, if based on sufficient evidence, will not be disturbed on appeal. *See, e. g., Penneys v. Pennsylvania Railroad Co.,* 408 Pa. 276, 183 A.2d 544 (1962). Viewing the evidence in the light most favorable to Centennial, the record in the instant case indicates that appellant's business was doomed to failure absent an immediate infusion of additional financial backing. The motel and restaurant business appellant operated on the insured premises sustained operating losses in its first two years of operation and it was projected that it would sustain a net operating loss during the business year in which the fire occurred. Accounting records introduced into evidence revealed that appellant's ratio of assets to liabilities was 1:4 at the end of fiscal year 1972 and approximately 1:5 at the end of fiscal year 1973. Expert testimony indicated that in a viable business enterprise, the ratio of assets to liabilities generally would be 2:1 and that the progressively deficient ratio displayed by appellant could only lead to financial ruin absent additional financing. Furthermore, officers of Marine Bank, the bank with which appellant maintained its payroll account, attested to appellant's financial plight. Two days prior to the fire, Marine Bank sent a letter to appellant to notify it that as a result of numerous overdrafts, appellant's payroll checking account was being terminated, and previous testimony disclosed that appellant's financial predicament made prospects of obtaining additional financing in the form of a $350,000 loan from Marine Bank bleak. We hold that the record adequately supports the trial court's finding that appellant's operation could not have

continued as a viable business enterprise. The record, taken as a whole, depicts an establishment floundering with no apparent rescue in sight. Under these circumstances, the trial court was correct in concluding that no business interruption loss was endured by appellant as a result of the fire.

Although we affirm the judgment of the court of common pleas, we are compelled to modify it with respect to interest. In its opinion in support of judgment, the trial court stated "On the money paid into Court [*i. e.*, the $181,220 paid into court by Centennial on December 16, 1974], several problems arose concerning it so it would be unfair to award interest to plaintiff for that money." We find that trial court misapplied the law in denying interest on the $181,220 amount.

■ The policy of fire insurance in the instant case provided that the loss would be payable sixty days after proof of loss was received by the insurance company. Both this court and our supreme court have stated that when such policies are in force, interest on the amount payable shall not start to run until the sixty–day period has expired. *See Gardner v. Freystown Mutual Fire Insurance Co.*, 350 Pa. 1, 37 A.2d 535 (1944); *Samuels v. California Insurance Co.*, 192 Pa.Super. 484, 162 A.2d 48 (1960); *J. Purdy Cope Hotels Co. v. Fidelity–Phenix Fire Insurance Co.*, 126 Pa.Super. 260, 191 A. 636 (1937). However, if the insurance company denies liability in toto, it is not entitled to the sixty–day period allowed for adjustment of the loss, and interest is recoverable from the date of the fire. *Gardner v. Freystown Mutual Fire Insurance Co., supra; Samuels v. California Insurance Co., supra.*

■ In the case *sub judice*, appellant submitted proof of loss to Centennial on August 22, 1974. Therefore, under the terms of the policy, the loss became "payable" and thus interest began to run on October 21, 1974, absent a complete denial of liability by Centennial. The record does not disclose such a denial by Centennial. Although it consistently denied liability for business interruption loss and the existence of an oral binder for additional coverage for contents loss, Centennial acknowledged liability of $141,220 for the

loss of the building and $40,000 for the original coverage for loss of contents. In accordance with this posture, it deposited $181,220 into the court of common pleas on December 16, 1974, and the sum was placed in an interest bearing account. Additionally, Centennial did not contest liability for that amount during trial.

Because Centennial did not deny liability for the $181,220 amount, interest on that sum commenced on October 21, 1974.[3] We hold, therefore, that appellant was entitled to interest on the $181,220 amount from October 21, 1974, until the date upon which the funds were placed in an interest bearing account with the court.

█ We have authority to mold the verdict by adding interest. *See Peyton v. Margiotti,* 398 Pa. 86, 156 A.2d 865 (1959); *Gold & Company, Inc. v. Northeast Theater Corporation et al.,* 281 Pa.Super. 69, 421 A.2d 1151 (1980); *Samuels v. California Insurance Co., supra.* Accordingly, we mold the verdict to provide for interest to appellant on the $181,220 sum at the rate of six per cent per annum calculated from October 21, 1974, to December 16, 1974.

The judgment is modified by adding interest as aforesaid.

**3.** Conversely, since Centennial did deny liability for the additional contents coverage provided for in the oral binder entered into by agent MacEwen, the trial court was correct in assessing interest on that $20,000 amount from the date of the fire.