676 P.2d 1274

**MANDUCA DATSUN, INC.,**
**Cross-Claimant, Appellant,**
**and Cross-Respondent,**

v.

**UNIVERSAL UNDERWRITERS INSUR-ANCE COMPANY, a corporation,**
**Cross-Defendant, Respondent, and**
**Cross-Appellant.**

No. 14068.

Court of Appeals of Idaho.

Jan. 31, 1984.

Roger D. Ling, Ling, Nielsen & Robinson, Rupert, for appellant.

Edward L. Benoit, Benoit, Alexander & Sinclair, Twin Falls, for respondent.

BURNETT, Judge.

This case presents a host of issues concerning the extent of loss covered by a fire insurance policy. The insured, Manduca

Datsun, suffered substantial fire damage to a building where it operated an automobile dealership. The loss was covered by a policy issued by Universal Underwriters; but the amount of loss recoverable under the policy became the subject of dispute. This controversy found its way to court when several of Manduca's creditors, seeking payment of debts owed by the distressed dealership, sued both Manduca and the insurance carrier. The carrier tendered sufficient money to satisfy the creditors' claims, but Manduca cross-claimed against the carrier for additional recovery under the policy. Judgment was entered on the cross-claim, allowing some but not all of the additional recovery sought. Both the dealership and the carrier have appealed.

The general issues, consolidated by subject matter, are (1) whether the district court properly determined the amount of loss caused by damage to the building and to fixtures; (2) whether the court correctly interpreted a "loss of earnings" clause in the policy; (3) whether damage to asphalt around the building should be recoverable under a "debris removal" clause; and (4) whether the parties are entitled to certain litigation costs and attorney fees. We affirm the district court's rulings on damage to the building and fixtures, loss of earnings, and attorney fees. We reverse the court's decisions on debris removal and certain litigation costs. Finally, we award the dealership attorney fees on appeal.

## I

We first consider the district court's determination of loss occasioned by damage to the building and to fixtures. This issue focuses upon three controverted points: (a) the "actual cash value" of the building, (b) the inclusion of architect's fees in computing the building loss, and (c) the value of fixtures destroyed.

### A

The insurance policy provides coverage for damage to the building, up to the amount of its "actual cash value."[1] The policy defines this term as

> the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such LOSS, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair. . . .

The district court construed this definition to require that the cost to construct a new building be determined, and that a deduction be made for depreciation of the prior building. The court deducted twenty percent. The dealership now argues that no such deduction should have been made, or—in any event—that twenty percent was too much. The carrier contends that it was not enough.

■ The policy definition of "actual cash value" is silent on whether depreciation should be deducted. Consequently, this case is unlike *Boise Ass'n of Credit Men v. United States Fire Insurance Co.*, 44 Idaho 249, 263, 256 P. 523, 527 (1927), where the insurance policy specifically referred to a "proper deduction for depreciation" and such a deduction was upheld. However, it would be inappropriate to leap from *Boise Ass'n* to a negative inference that no deduction should have been made here. The policy must be read and considered as a whole. *E.g., Watkins v. Federal Life Insurance Co.*, 54 Idaho 174, 29 P.2d 1007 (1934).

■ The insurance contract here is a general, multi-risk "Unicover" policy. The policy contains certain basic coverages and a menu of optional coverage choices. Among these choices is an endorsement specifically covering "replacement cost (without deduction for depreciation)." This endorsement is part of the policy document jointly introduced by both parties as an exhibit at trial. The policy, read and considered as a whole, identifies different coverages for "actual cash value" and "replacement cost (without deduction for de-

---

1. The policy also contains a specific dollar limitation upon recoverable loss. However, our treatment of the issues presented on appeal makes it unnecessary to discuss that limitation.

preciation)." The district court found—and it is uncontroverted—that the dealership did not purchase the latter coverage. Rather, the dealership purchased coverage of "actual cash value" at a lesser premium. We hold that the court correctly interpreted the dealership's insurance coverage to require a depreciation deduction. *See generally* 6 J. APPLEMAN & J. APPLEMAN, INSURANCE LAW AND PRACTICE § 3823 (1972 & Supp.1982); Annot., 61 A.L.R.2d 711, 715–18, 725–33 (1958).

The next inquiry is whether the twenty percent deduction made by the district court was appropriate. This is a question of fact. Our standard of review on factual questions is that the trial judge's finding will not be disturbed unless it is clearly erroneous. I.R.C.P. 52(a). A finding will not be deemed clearly erroneous if it is supported by substantial and competent, though conflicting, evidence. *E.g. Rasmussen v. Martin,* 104 Idaho 401, 659 P.2d 155 (Ct.App.1983).

■ The court received varying expert opinions that the depreciation percentage should have been either 35%, 30%, 25%, 20% or 6.5% of the actual cash value. In addition, there was evidence that this type of building ordinarily would have a useful life of fifty years. The building had been remodeled shortly before the fire and had an estimated remaining useful life of forty years. Weighed against this record, the court's finding that a twenty percent factor should be applied is not clearly erroneous and will not be disturbed.

### B

■ We now examine the insurance carrier's assertion that the district court erred when computing "actual cash value," by including an architect's fee of $1,000 in the cost of reconstruction. The dealership has countered by urging that the fee amount was insufficient.

The policy is silent on architect's fees, and we have been cited no controlling authority on this point. In essence, the carrier suggests that an architect would be an unnecessary expense of reconstruction.

Thus, what on the surface seems to be an issue of law actually turns upon a determination of fact—the necessity of an architect for this particular project. The record contains competent testimony that a prudent investor in a reconstructed building, like the structure at issue here, would utilize the professional services of an architect. We hold that the district court did not commit clear error by including the cost of such services as a component in determining the reconstruction costs, and ultimately the "actual cash value," of the building.

■ The amount of the fee also raises a question of fact. The record discloses conflicting testimony as to the scope and cost of architectural service necessary for reconstruction. The court's finding that $1,000 would be appropriate, while an imprecise estimate, is within the evidence. It is not clearly erroneous and will not be overturned.

### C

■ The carrier next challenges the district court's findings as to the value of various fixtures destroyed in the fire. This, too, is an issue of fact; but it must be viewed in light of the appropriate legal test for valuing fixtures. The insurance policy establishes no test other than the general standard of "actual cash value." In *Boise Ass'n of Credit Men v. United States Fire Insurance Co., supra,* our Supreme Court stated that "such property should be appraised according to the actual worth of the articles to the owner, for use in the condition in which they were at the time of the fire, excluding any fanciful or sentimental consideration." *Id.* at 264, 256 P. at 527.

A witness for the dealership testified concerning both the replacement cost and actual cash value, taking into account usage and depreciation. Witnesses for the carrier testified that the fair market value of the fixtures, in the second-hand market, was less than either the actual cash value or replacement cost suggested by the deal-

ership. We believe the valuation method employed by the dealership's witness was consistent with *Boise Ass'n.* His testimony concerning actual cash values, although inconsistent with the lower figures submitted by the carrier's witnesses, was not inherently incredible. The district court generally followed the values supplied by the dealership's witness in determining the extent of fixture loss. The court's findings will not be set aside.

## II

■ We now turn to the district court's denial of any recovery for interruption of business under the "loss of earnings" endorsement to the policy.[2] The district court made factual findings that when the fire occurred, Manduca was "basically out of business" and in a "minus working capital condition;" that its inventory financing had been terminated by a bank; and that it had "ceased business operations." Accordingly, the court refused to allow any recovery for loss of earnings.

The record substantially supports the district court's findings. The dealership's bank financing had been terminated. Approximately one month before the fire, the dealership's work force had been reduced from more than twenty employees to a manager and a bookkeeper. The trial court also found, with support in the record, that the manager had informed all employees the business was closing and everyone would be terminated. The evidence further indicated that the dealership was making no payments on its debts when

the fire occurred. Finally, although the dealership had an inventory of cars and parts, there is a conflict in the evidence as to whether sales were generating any net profit before the fire.

On appeal, the dealership has pointed to such conflicts in the evidence. It contends that it was still a going concern at the time of the fire, and that the business interruption was only temporary. These arguments, although well made by able counsel, are insufficient to overturn the district court's findings upon this record, under our standard of appellate review.

The district court properly considered the past business experience of the dealership in determining potential earnings, and in denying any recovery of lost earnings as defined in the policy. A similar case is described in *Berkeley Inn, Inc. v. Centennial Insurance Co.,* 282 Pa.Super. 207, 422 A.2d 1078 (1980). There a business was partially destroyed by fire and sued unsuccessfully to collect for loss of earnings under an insurance policy. The appellate court observed that business interruption insurance is intended to return to the insured business the amount of profit it would have earned had the event insured against not intervened. The court then stated that "[i]n assessing liability for a business interruption loss, the previous experience of the business before the fire as well as its probable future experience thereafter must be considered, and as a prerequisite to recovery, the claimant must show an actual monetary loss." *Id.* 422 A.2d at 1080. *See generally* 19 G.

---

2. This endorsement provided in part that:
   [The insurance carrier] shall be liable for: (a) the actual LOSS Sustained by the INSURED resulting directly from necessary interruption of business, but not exceeding the reduction in EARNINGS less charges and expenses which do not necessarily continue during the interruption of business, for only such length of time as would be required with the exercise of due diligence ... to rebuild.... Due consideration shall be given to the continuation of normal charges and expenses, including payroll expense, to the extent necessary to resume operations of the INSURED with the same quality of service which existed immediately preceding the LOSS.

   * * * * *

   For the purposes of this insurance "EARNINGS" are defined as net profit plus payroll expense, taxes, interest, rents and all other operating expenses *earned by the business.* In determ[in]ing LOSS hereunder, due consideration shall be given (1) to the EARNINGS of the business before the date of damage or destruction, and to the probable EARNINGS thereafter, had no LOSS occurred; (2) to the continuation of operating expenses, including payroll expense to the extent necessary to resume operations ... and (3) the reduction of LOSS which could be made possible by the INSURED by resuming complete or partial operation.... [Emphasis added.]

COUCH, CYCLOPEDIA OF INSURANCE LAW § 79:526 (R. Anderson 2d ed., M. Rhodes rev. vol. 1983).

We further note that the loss of earnings endorsement in this case is considered in the law an "open policy." *See* J. APPLEMAN & J. APPLEMAN, *supra;* Annot., 83 A.L.R.2d 885, 904 (1962). This means that the burden of proof was on the dealership to prove the amount of its lost earnings. The district court found that Manduca Datsun had not met its burden of proof. We will not disturb this finding. *See Goetz v. Hartford Fire Insurance Co.*, 193 Wis. 638, 215 N.W. 440 (1927).

### III

Next we consider the "debris removal" paragraph of the policy.[3] The district court denied recovery for asphalt damage expected to occur during the removal of debris. The court found that the asphalt was not damaged in the fire; consequently, there could be no recovery under that part of the policy providing coverage for property destroyed by fire. The court also refused to allow recovery under the "debris removal" paragraph because damage to asphalt is not specifically included in the paragraph. On this latter point, we disagree.

■ The phrase "expense incurred in the removal of debris" is not defined in the policy. However, we believe it has a plain meaning. It covers the necessary cost of clearing the fire site of debris so reconstruction can begin. The economic purpose of such coverage would be partly or wholly defeated if it did not provide payment for damage necessarily caused by the debris removal process itself.

■ At the time of trial in this case, the debris had not yet been removed. However, the record shows that the most economical way to remove the debris would be by heavy equipment and that use of such equipment necessarily would produce asphalt damage. Accordingly, we reverse the district court's decision on this issue and remand for a determination, if and when appropriate, of any asphalt damage actually and necessarily caused by debris removal.

### IV

■ Finally, we turn to questions of costs and attorney fees. We focus initially upon awards made by the trial court. The insurance carrier argues that the district court erred by awarding the dealership, as costs, fees for two witnesses who testified on lost earnings—an issue on which Manduca did not prevail below and has not prevailed here. We agree with the carrier and reverse the district court's award of such fees. *See Hutchison v. Kelton*, 99 Idaho 866, 590 P.2d 1012 (1979).

■ The trial court also awarded the dealership $6,500 in attorney fees under I.C. § 41–1839. This statute mandates a "reasonable" fee award to an insured who successfully litigates an insurance claim properly made but not timely paid. The insurance carrier in this case does not dispute the award; but the dealership, which had sought $11,856, contends that $6,500 was inadequate. The question is one of judicial discretion. We will not disturb a fee award unless the district court abused that discretion. *See Smith v. Great Basin Grain Co.*, 98 Idaho 266, 561 P.2d 1299 (1977). The party challenging the adequacy of the award must show such an abuse.

Here, the dealership has merely summarized its attorney's aggregate time in the case, requesting full compensation at a fixed hourly rate. The court, in fixing an award of $6,500, noted that this amount would be "consistent with [the] judgment."

---

**3.** This paragraph provides as follows:
DEBRIS REMOVAL—Coverage under this Coverage Part includes expense incurred in the removal of debris of property covered occasioned by LOSS insured against in this Coverage Part, but this Company shall not be liable ... for more than the amount for which this company would be liable, exclusive of debris removal expenses, if all the property covered at the LOCATION where the LOSS occurred were destroyed.

The amount of the judgment, beyond the sum earlier tendered by the carrier, was $20,580.

Both the dealership's showing and the district court's ruling are rather skeletal if viewed under the attorney fee criteria established in I.R.C.P. 54(e). However, that rule did not become effective until March 1, 1979, when this case already had been filed. Consequently, the rule is not applicable here. *See Ladd v. Coats,* 105 Idaho 250, 668 P.2d 126 (Ct.App.1983). We conclude that an abuse of the trial court's discretion has not been shown in this record.

On appeal the dealership seeks an additional award of attorney fees under § 41–1839. In order to receive an award under the statute, an insured must prevail in the litigation. *Halliday v. Farmers Insurance Exchange,* 89 Idaho 293, 404 P.2d 634 (1965). In this appeal, the dealership has compiled a mixed record of success on the issues it has raised. It has persuaded us to reverse the district court's decision refusing to grant recovery for any damage to the asphalt caused by removal of debris. However, it has not succeeded in overturning the district court's rulings on the larger issues of "actual cash value" and "loss of earnings." Upon such a pattern of results—without more—we might hesitate to say that the dealership sufficiently prevailed on appeal to invoke the statutory entitlement to a fee award. However, the insurance carrier also has chosen the role of an appellant in this case. It has challenged the district court's determinations concerning the value of fixtures, the inclusion of an architect's fee as a component of building reconstruction cost, and the award of certain witness fees as costs. The dealership has been required to meet these

challenges, and—except as to the question of witness fees—it has done so successfully. Considering all of these factors, we conclude that the dealership is entitled to a reasonable attorney fee on appeal. The amount shall be determined in compliance with I.A.R. 41(d), and such determination may take account of the result obtained in relation to issues and claims raised on appeal. *See* I.R.C.P. 54(d)(1)(B).

The judgment of the district court is affirmed in part and reversed in part, as set forth above. The cause is remanded for further proceedings consistent with this opinion. Costs and attorney fees to appellant, cross-respondent, Manduca Datsun.

WALTERS, C.J., concurs.

SWANSTROM, Judge, dissenting in part.

I concur in the foregoing opinion except as to the majority's award of costs and attorney fees to Manduca on appeal. It was the dealer who, in several instances, in this appeal challenged unsuccessfully either the absence of an award of damages or the adequacy of the award made by the trial judge. In the one issue raised first by the carrier on the allowance of witness fees, the carrier prevailed. In a weighing process of considering the relief sought by the respective parties on appeal against the result obtained I cannot conclude that the dealer prevailed. *Compare Burnham v. Bray,* 104 Idaho 550, 661 P.2d 335 (Ct.App. 1983) and *Chadderdon v. King,* 104 Idaho 406, 659 P.2d 160 (Ct.App.1983).