1998 SD 34

Ivan ZOCHERT and Neil Zochert, d/b/a Zochert Farms, Inc., Plaintiffs and Appellees,

v.

NATIONAL FARMERS UNION PROPERTY & CASUALTY COMPANY, Defendant and Appellant.

No. 20208.

Supreme Court of South Dakota.

Considered on Briefs Feb. 19, 1998.

Decided April 8, 1998.

Thomas J. Linngren of Green, Schulz, Roby, Oviatt, Cummings & Linngren, Watertown, for plaintiffs and appellees,

Chester A. Groseclose, Jr. of Richardson, Groseclose, Wyly, Wise & Sauck, Aberdeen, for defendant and appellant.

PER CURIAM.

ACTION

[¶ 1.] National Farmers Union Property & Casualty Company (Company) appeals the trial court's order granting summary judgment to Ivan and Neil Zochert, d/b/a/ Zochert Farms, Inc. (Zochert). We reverse and remand for determination of the appropriate depreciation cost.

## FACTS

[¶ 2.] On May 17, 1996, two of Zochert's silos, which were insured by Company under a farmowner's policy and estimated to be approximately twenty years old, sustained wind damage. The policy had a $250 deductible and provided coverage in an amount not to exceed $35,000 for each silo. Company's claim adjuster estimated the total cost of repair (replacement cost) of both silos to be $15,255.76. He calculated depreciation on the silos to be $5,166.96.[1] The depreciation cost and the $250 deductible were subtracted from the replacement cost for a total of $9,838.80. Company issued a check in this amount to Zochert for its loss.

[¶ 3.] Both parties agreed that under the terms of the policy, "loss ... will be settled on the basis of the actual cash value of the property damaged, not to exceed the amount of . the insurance applicable." They disagreed, however, regarding whether depreciation was to be deducted when calculating the actual cash value. Zochert filed a lawsuit to recover $5,166.96, the amount of depreciation cost deducted by Company. Company asserted depreciation must be deducted to determine actual cash value. Both parties filed motions for summary judgment. The trial court granted summary judgment to Zochert. Company appeals.

[¶ 4.] **Whether actual cash value and replacement cost have the same meaning under the terms of Zochert's insurance policy?**

[¶ 5.] Interpretation of insurance contracts presents a question of law to be reviewed de novo. *Alverson v. Northwestern Nat'l Cas. Co.,* 1997 SD 9, ¶ 5, 559 N.W.2d 234, 235. An ambiguous interpretation will be construed against the drafter of the contract. The fact that the parties differ as to the contract's interpretation does not create an ambiguity. *Id.* at ¶ 8. "Insurance contracts warrant reasonable interpretation, in the context of the risks insured, without stretching terminology." *Opperman v. Heritage Mutual Ins. Co.,* 1997 SD 85, ¶ 4, 566 N.W.2d 487, 490 (citing *State Farm Mut. Auto. Ins. Co. v. Vostad,* 520 N.W.2d 273, 275 (S.D.1994)).

[¶ 6.] Neither "actual cash value" nor "replacement cost" is defined under the definitions portion of the farmowner's policy, however, their meaning can be determined by reviewing the policy language as a whole. "[A]ll the provisions of the policy must be considered and construed together, and the intention ascertained from the language of the policy alone, if possible." *Hemmer–Miller Dev. Co. v. Hudson Ins. Co.,* 59 S.D. 129, 133, 238 N.W. 342, 343 (1931).

[¶ 7.] In reviewing the loss settlement provisions under Zochert's policy, generally two kinds of settlement are described depending upon the amount of insurance coverage purchased:

> If at the time of loss the amount of insurance in this policy on the damaged dwelling is 80% or more of the full replacement cost of the dwelling immediately prior to the loss, *we will pay the cost of repair or replacement, without deduction for depreciation.* Payment will not exceed the smallest of the following amounts:
>
> . . . .
>
> If at the time of loss the amount of insurance in this policy on the damaged dwelling is less than 80% of the full replacement cost of the dwelling immediately prior to the loss, *we will pay the actual cash value of that part of the dwelling damaged.* Payment will not exceed the amount of insurance under this policy applying to the dwelling.

(emphasis added). If these two kinds of loss settlements carried the same meaning, as Zochert asserts, there would be no need to describe them differently in the policy. Another provision of the policy also notes the

---

**1.** Zochert indicated on appeal it does not accept this amount for depreciation should we find, after considering the merits of this appeal, that depreciation is to be deducted from replacement cost. Company argues Zochert has not heretofore questioned this amount. Review of Zochert's brief in support of its opposition to Company's motion for summary judgment demonstrates this issue was raised by Zochert before the trial court. This brief was made part of the settled record transmitted from the trial court. *See Baltodano v. North Cent. Health Services, Inc.,* 508 N.W.2d 892, 894 (S.D.1993).

distinction between these two types of loss settlements:

> You may elect not to replace some of or all of the destroyed or stolen property. *Settlement for the property not replaced will be on an actual cash value basis.* If you later decide to replace any destroyed or stolen property, you may make an additional claim within 180 days after the loss.

(emphasis added). Clearly, this provision demonstrates that actual cash value does not equal replacement cost but is determined at some lesser amount.

[¶ 8.] A federal district court, in a declaratory judgment action arising out of an explosion at an electrical power plant, was asked to review similar policy language. Interpreting a property insurance policy where "actual cash value" was not directly defined, the court concluded:

> More importantly, the parenthetical expression '(without deduction for depreciation)' served to *define* 'the full cost of repair or replacement.' The only reasonable conclusion to be drawn from this provision is that the more restrictive coverage for losses in excess of $1,000 (labeled 'actual cash value') is to be calculated *with* a deduction for depreciation. Defendant is of course correct in contending that this definition of actual cash value could have been stated more directly. Nevertheless, the rules of construction do not permit us to torture the terms of an insurance contract to create an actual ambiguity where one does not exist.

*Ins. Co. of North America v. City of Coffeyville,* 630 F.Supp. 166, 169 (D.Kan.1986) (emphasis original).

[¶ 9.] The question was also answered by an Idaho appellate court interpreting the term "actual cash value" under a fire insurance policy. *Manduca Datsun, Inc., v. Universal Underwriters Ins. Co.,* 106 Idaho 163, 676 P.2d 1274 (Idaho App.1984). The court noted that where the policy definition of "actual cash value" was silent on whether depreciation should be deducted, the policy had to be read and considered as a whole in deter-

mining whether such deduction should be made. The court affirmed the trial court's determination that "actual cash value" of a building destroyed by fire included a depreciation deduction where the insured had purchased fire insurance coverage for "actual cash value." *Id.* 676 P.2d at 1277. *See Travelers Indem. Co. v. Armstrong,* 442 N.E.2d 349, 353 (Ind.1982) (noting that "courts uniformly hold ... that actual cash value insurance is strictly a contract of indemnity. The insured should be made whole but not be put in a better position than he was before the fire.").

[¶ 10.] In *Elberon Bathing Co., Inc. v. Ambassador Ins. Co., Inc.,* 77 N.J. 1, 389 A.2d 439 (1978), the court reversed and remanded, holding an appraisal was improper and did not measure "actual cash value" under a fire insurance policy where the appraisal was based upon replacement cost of the property without any consideration of depreciation. The court stated that:

> to the extent that replacement cost is or may be a proper criterion of actual cash value, there must normally be a deduction for depreciation lest the insured receive more than indemnity for his loss. In failing to make such a deduction, the appraisers violated the terms of the policy and committed a mistake of law.

*Id.* 389 A.2d at 445. The court noted that to allow the insured to recover the original value of real estate that has depreciated would violate the principle of indemnity by providing a windfall to the insured. *Id.* at 442. It further explained the relevant case law reflects three general categories for measuring "actual cash value:" (1) market value; (2) replacement cost less depreciation; and (3) the now most widely accepted test, the "broad evidence rule." *Id.* at 443–44.

[¶ 11.] In *Lampe Market Co. v. Alliance Ins. Co.,* 71 S.D. 120, 22 N.W.2d 427, 428 (1946), we adopted the "broad evidence rule" which permits consideration of all evidence an expert would find relevant to a determination of value.[2] In *Lampe,* the jury had been

---

2. The broad evidence rule was discussed in Couch on Insurance 2d (1983):

> In recent years, there has been a tendency on the part of a substantial number of courts to reject reproduction or replacement cost, or

asked to determine the actual cash value of a building damaged by fire. We held the trial court did not err in instructing the jury that:

> In determining the 'actual cash value' of said building the jury should take into consideration *the cost of restoration or replacement of the building less depreciation* thereon since it was erected; any element of obsolescence; the size of the building; the material of which it is composed; its age and state of preservation. You should also take into consideration the amount for which the property would sell for cash at a fair sale in the usual course of business; that is, the amount for which the property would sell at a sale in which the seller was not forced to sell but in which he was ready and willing to sell and the purchaser was not forced to buy but was ready and willing to buy. You should take into consideration the opinions upon value given by qualified witnesses; the gainful uses to which the building might have been put; its value for the purpose of rental; its location in the community, and any other facts disclosed by the evidence which will throw any light upon the actual cash value of the building at the time of the loss.

*Id.* at 428 (emphasis added). We recognized that replacement cost, less depreciation, is an element to be considered but is not the sole test of actual cash value. *Id.* (citations omitted).

> Replacement cost, less physical depreciation, establishes the theoretical present cost of reproducing a particular building. It is not the invariable test of value because in a particular case other factors may overcome or qualify its influence upon sound opinion. Value, after all, is a matter of opinion. It cannot be denied that on occasion such considerations as location and obsolescence will reduce value below reproduction cost. 'Actual' cash value will not be arrived at by ignoring such realities.

*Id.* at 429. More recently, in *Heer v. State*, 432 N.W.2d 559 (S.D.1988), we affirmed a verdict wherein a jury instruction effectively

equated "actual cash value" with "fair market value," where determination of "fair market value" included the consideration of replacement cost less depreciation. *Id.* at 565–66 (discussing and reaffirming the *Lampe* analysis). The views expressed in these two cases comport with the majority view. *See* Annotation, *Depreciation as Factor in Determining Actual Cash Value for Partial Loss under Insurance Policy*, 8 A.L.R.4th 533, 537 (1981 & Supp.1997) (noting that, regardless of the valuation method used, it is "generally held" that depreciation is an appropriate or requisite factor in determining cash value); Annotation, *Test or Criterion of "Actual Cash Value" Under Insurance Policy Insuring to Extent of Actual Cash Value at Time of Loss*, 61 A.L.R.2d 711, 715–18 (1958) (general test of the measure of damages for loss is the market value of the property and, in jurisdictions where the replacement cost is the proper criterion of "actual cash value," a deduction for depreciation is made where the value of the replaced property would exceed the value of that destroyed). *See also* Annotation, *Construction and Effect of Property Insurance Provision Permitting Recovery of Replacement Cost of Property*, 1 A.L.R.5th 817, 827 (1992 & Supp.1997) (noting that replacement cost coverage was devised to remedy shortfall in coverage that results under policy compensating for actual cash value alone; standard policy compensating an insured for the actual cash value of damaged or destroyed property makes the insured responsible for bearing the cash difference necessary to replace old property with new property).

■ [¶ 12.] In granting summary judgment to Zochert, the trial court held the purpose of this insurance was to allow Zochert to rebuild after a loss. The court stated: "Insureds who faithfully pay their premiums should get the benefit of their bargain. Plaintiffs will be unable to repair their silos if they are not compensated in full for their loss." Affirmance of the trial court in this case would provide Zochert with more coverage than is allowed under its farmowner's

---

market value, as the sole test or criterion of the actual cash value of buildings. These courts have relied upon what might be termed the broad evidence rule, under which the courts

will receive any evidence logically tending to show actual value.…

*Id.* at § 54:252 (citing *Lampe*).

policy and would disregard the contractual language. However this does not end the inquiry as both parties moved for summary judgment.

'Summary judgment is an extreme remedy, not intended as a substitute for trial. It is appropriate to dispose of legal, not factual issues and, therefore, it is authorized only when the movant is entitled to judgment as a matter of law because there are no genuine issues of material fact.'

*Continental Grain Co. v. Heritage Bank,* 1996 SD 61, ¶ 17, 548 N.W.2d 507, 511 (quoting *Piner v. Jensen,* 519 N.W.2d 337, 339 (S.D.1994)). A review of the record before the trial court demonstrates that Zochert moved for summary judgment but further argued that, should its motion not be granted, it was not in agreement with Company on the amount of the depreciation deduction. This establishes a genuine issue of material fact which precludes summary judgment for Company.

[¶ 13.] The order granting summary judgment is reversed and the matter remanded to the trial court to determine the appropriate depreciation cost.

[¶ 14.] MILLER, C.J., and SABERS, AMUNDSON, KONENKAMP and GILBERTSON, JJ., participating.

