J-A13011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| INTERNATIONAL MANAGEMENT CONSULTANTS, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SEA-Z, INC. | |
| Appellant | No. 704 EDA 2016 |

Appeal from the Order February 8, 2016
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2011-24556

BEFORE: LAZARUS, J., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY LAZARUS, J.:                           **Filed August 4, 2017**

Sea-Z, Inc. ("Sea-Z") appeals from the order granting Appellee's, International Management Consultants, Inc. ("IMC"), post-trial motion to mold a jury verdict to include interest, attorneys' fees and expenses under the Contractor and Subcontractor Payment Act ("CASPA").[1] After careful review, we affirm in part, reverse in part and remand.

On April 6, 2010, IMC entered into an agreement ("contract") with Sea-Z to provide materials and labor to complete renovations and additions to Sea-Z's King of Prussia, Pennsylvania, warehouse facility and office

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 73 P.S. §§ 501-516.

building. The contract price was a lump sum of $1,509,824.00. Under the contract, Sea-Z agreed to pay IMC in-progress payments based on written "application of payment" as the work progressed. Sea-Z was entitled to deduct 10% of the amount approved for payment to be held as "retainage" until final payment was due.

The contract required IMC to achieve "substantial completion"[2] within 208 calendar days from the date work commenced. Here, work commenced in June 2010 after IMC received the permit. Substantial completion was delayed. IMC and Sea-Z each disagree as to which party is responsible for the contract delay. IMC contends that substantial completion occurred on or around March 17, 2011; Sea-Z contends that IMC abandoned the project prior to achieving substantial completion.

On August 26, 2011, IMC filed a complaint against Sea-Z for breach of contract, CASPA violations, and unjust enrichment, seeking to recover the contract balance due on the project. IMC calculated the balance owed under

---

[2] Substantial completion is defined under the contract as:

> [T]he stage in the work when the work or designated portions thereof is sufficiently complete in accordance with the contract documents so that the owner can occupy or utilize the work for its intended purpose.

A201 General Conditions, §9.8.1.

the contract at $118,923.70,[3] which represented the total of two unpaid invoices it submitted to Sea-Z in February and April 2011.[4] On October 6, 2011, Sea-Z filed an answer, new matter and counterclaim for breach of contract, contractual liquidated damages,[5] and attorneys' fees, interest, and penalties, alleging that it had a contractual right to withhold payment as a result of IMC's "failure to perform and/or complete the work" in accordance with the parties' contract.[6] *See* Sea-Z Answer, New Matter & Counterclaim, 10/6/11, at 14. In its answer, Sea-Z averred that the parties' original contract sum was increased to $1,571,756.00 "based []on mutually agreed upon change orders to the Contract," and that Sea-Z "has paid IMC

_____

[3] IMC later stated in its answer to Sea-Z's counterclaim that the balance owed under the parties' contract was **$123,897.70**, based on the fact that the contract sum was later increased from $1,509,824.00 to $1,575,631.00 by mutually agreed change orders.

[4] According to IMC, it submitted invoices to Sea-Z on February 25, 2011, in the amount of $75,797.13, and on April 25, 2011, in the amount of $43,126.57. IMC Complaint, 8/26/11, at ¶¶ 8-10.

[5] Sea-Z sought liquidated damages pursuant to the parties contract, for IMC's failure to achieve substantial compliance in a timely manner, citing the parties' contract to substantiate its entitlement to over $50,000, plus post-judgment interest. In coming to its calculation of liquidated damages, Sea-Z computed the damages at $500.00/day for days 1-30 after substantial completion date (SCD); $1,000.00/day for days 31-60 after SCD; $1,500.00/day for days 61-90 after SCD; and $2,000.00/day for 91 days after SCD.

[6] Specifically, the counterclaim alleged that the incomplete work consisted of 54 items. Moreover, Sea-Z also claimed that IMC's work did not conform to the contract with regard to 11 items.

$1,451,751.00, leaving a contract balance of $120,005.00." *Id.* at ¶¶ 10-11. Moreover, Sea-Z averred that the cost to complete IMC's unfinished work and to correct non-conforming work will exceed the unpaid contract balance. *Id.* at ¶ 16.

From November 2-5, 2015, a trial was held before the Honorable Carolyn Tornetta Carluccio. After deliberating, the jury returned the following verdict:

- Sea-Z breached its contract with IMC;

- Sea-Z did not have a good faith basis under CASPA to withhold payment from IMC; and

- IMC breached its contract with Sea-Z (on Sea-Z's counterclaim).

Jury Verdict, 11/6/15, at 1-2. The jury awarded IMC $124,280.95 in damages and Sea-Z $58,000.00 in damages.

On November 13, 2015, IMC filed post-trial motions to mold the verdict to include statutory interest, penalties, and attorneys' fees and expenses under sections 505(d), 509(d) and 512(a) of CASPA, respectively. On November 20, 2015, Sea-Z filed a cross-motion for post-trial relief seeking vacation of the jury's finding that it lacked good faith in response to interrogatory #2 of the verdict slip, claiming that the response was against the weight of the evidence.

On February 8, 2016, the trial court granted IMC's post-trial motions and molded the verdict to $404,036.89, which now included $65,204.88 in statutory interest, $65,204.88 in penalties, and $149,346.18 in attorneys'

fees and expenses under CASPA. On February 11, 2016, the court entered judgment on the verdict in the amount of $404,036.89 in favor of IMC and in the amount of $58,000 for Sea-Z. On February 19, 2016, Sea-Z filed a timely notice of appeal from the trial court's February 8, 2016 order. Sea-Z raises the following issues on appeal:

> (1) Whether the trial court erred as a matter of law or abused its discretion in denying Sea-Z's cross-motion to set aside the jury's finding that Sea-Z "did not have a good faith basis under [CASPA] to withhold payment from IMC . . .", including the following subsidiary questions:
>
> > a. Did the trial court err in sustaining the jury's finding that Sea[-]Z lacked a good faith basis in withholding payment from IMC where such finding is inconsistent with the jury's award of $58,000 to Sea-Z for breach of [c]ontract[?]
> >
> > b. Did the trial court err in sustaining the jury's finding that Sea-Z did not have a good faith basis to withhold final payment where there was un[]contradicted evidence of IMC's failure to satisfy express conditions precedent to final payment under the parties['] [c]ontract?
>
> (2) Did the trial court err in molding the [j]ury [v]erdict when it assessed interest in favor of IMC under CASPA in the absence of any basis in the [j]ury [v]erdict to determine the amount of the contract balance due and owing (within the meaning of CASPA § 505(d)) or the amount held as retainage and subject to the special provisions of CASPA § 509(d)?
>
> (3) Did the trial court err in molding the [j]ury [v]erdict when it *assessed penalties* in favor of IMC under [s]ection 512(a) of CASPA in the absence of any basis in the [j]ury [v]erdict to determine the amount due under the [c]ontract that was "wrongfully withheld" within the meaning of that section?
>
> (4) Did the trial court err in molding the [j]ury [v]erdict when it *computed the amount of* interest and penalties [under] [s]ections 505(d) and 512(a) of CASPA based on the sum of

$123,879.70, being the entire amount of the contract balance claimed by IMC, without deduction or set-off for the jury's award of damages against IMC and in favor of Sea-Z in the amount of $58,000?

(5) Did the trial court err in molding the [j]ury [v]erdict when it found that IMC was the "substantially prevailing party" and awarded IMC the recovery of attorneys' fees and expenses under [s]ection 512(b) of CASPA?

(6) Did the trial court err in molding the [j]ury [v]erdict by failing to determine the amount of the reasonable attorney[s'] fee[s] allowed under [s]ection 512(b) of CASPA?

(7) Did the trial court err in molding the [j]ury's [v]erdict when it awarded to IMC attorneys' fees and expenses under [s]ection 512(b) of CASPA for those fees and expenses incurred by IMC in defending Sea-Z's counterclaim?

Appellant's Brief, at 11-13 (emphasis in original).

Sea-Z claims that the jury's determination that Sea-Z lacked a good faith basis to withhold paying IMC is inconsistent with its $58,000.00 verdict in Sea-Z's favor.[7] Instantly, Sea-Z failed to object at trial, immediately after the charge was read to the jury, following deliberations and the verdict, and prior to the discharge of the jury. *See* N.T. Jury Trial, 11/5/15, at 109

---

[7] Even if this issue were not waived, IMC suggests that one can reconcile the jury's determination that Sea-Z lacked good faith and recovered $58,000.00 on its counterclaim based upon IMC's obligation to repair any defective work *after* substantial completion of the project under the parties' contract. *See* Appellee's Brief, at 33-34. Moreover, as defense expert, Marline E. Buckley, testified on cross-examination, if the jury determined that the non-conforming items were not within the scope of the parties' contract and that IMC had substantially performed under the contract, the estimate for those items (which totaled over $631,000.00) would be irrelevant. N.T. Jury Trial, 11/5/15, at 65-67. Notably, the $58,000.00 recovery is less than 10 percent of what Sea-Z sought in damages for non-conforming work.

("Counsel, have there been any additions or corrections to the Charge as I gave it?  No, Your Honor."); *Id.* at 111-12 ("As to this verdict just rendered . . . [a]ny motions?  No, Your Honor.").  We find this claim waived.  *See Tyus v. Resta*, 476 A.2d 427 (Pa. Super. 1984) (where party contended trial court incorrectly charged jury as to measure of damages, failure to question instruction after judge charged jury waived issue on appeal); *see also Criswell v. King*, 834 A.2d 505 (Pa. 2003) (party's failure to object to jury's allegedly inconsistent verdict before jury is dismissed waives issue); *Rozanc v. Urbany*, 664 A.2d 619 (Pa. Super. 1995) (where objection is to wording of interrogatory or inconsistent result reached by jury following answering of interrogatories, claim is waived if party does not object to verdict and permit court to resolve issue).

In its next issue, Sea-Z claims that the jury's finding that it did not have a good faith basis to withhold final payment was against the weight of the evidence[8] where "there was un[]contradicted evidence of IMC's failure to satisfy express conditions precedent to final payment under the parties' [c]ontract."  Appellant's Brief, at 34.

_____

[8] We recognize that a post-trial motion alone is sufficient to preserve a claim that the verdict is against the weight of the evidence, where the verdict is not inconsistent or ambiguous and/or where an objection and instruction to the jury would not have eliminated the need for a new trial.  *Criswell*, *supra*.

At trial, IMC offered evidence to support the jury's determination that Sea-Z acted in bad faith in withholding payment. Specifically, IMC presented evidence showing that Sea-Z: failed to seek the architect's review and approval of alleged deficiency items, as is required under the parties' contract; did not timely reply to IMC's requests for information (RFIs); disregarded the architect's determination that the project was substantially complete and retainage should be released; did not make timely and complete payments to IMC throughout the project without explanation; failed to notify IMC of alleged deficiency items within 7 days of receipt of application for payment; preparing an inaccurate list of incomplete or non-conforming items at the end of the project to things that were not in the scope of the parties' contract; certified to the bank that all improvements had been performed and that all proceeds requested for construction costs will be paid to IMC; and deceived IMC by stating the bank was withholding funds pending completion of non-conforming items. **_See_** N.T. Jury Trial, 11/2/15, at 47-48, 57, 157-65; N.T. Jury Trial 11/3/15, at 133-34, 171-73, 177-84; N.T. Jury Trial, 11/4/15, at 144-45, 149-50, 170-71, 228, 233, 252-54; Defendant's Trial Exhibits 45-48; and R.R. 638a-38a, 725a.

The jury was free to believe this testimony and determine that Sea-Z did not have a good faith basis to withhold final payment; the trial court did not abuse its discretion in failing to award a new trial on this claim in spite of any evidence presented by Sea-Z to contradict IMC's case. **_See Fazio v._**

*Guardian Life Ins. Co. of Am.*, 62 A.3d 396 (Pa. Super. 2012) (appellate review of weight claim is review of exercise of discretion, not of underlying question of whether verdict is against weight of the evidence); *Mirizio v. Joseph*, 4 A.3d 1073, 1087 (Pa. Super. 2010) (new trial warranted on weight of evidence grounds only in truly extraordinary circumstances, i.e., when jury's verdict is so contrary to evidence that it shocks one's sense of justice and award of new trial is imperative so that right may be given another opportunity to prevail).

Several of Sea-Z's remaining claims focus on the fact that the jury's verdict does not reflect what portion of its award to IMC constitutes: the amount "due and owing" under the parties' contract; the amount of delay damages, the amount properly retained under the contract; and the amount withheld in bad faith. Without such a breakdown, Sea-Z contends that the court could not properly mold the verdict to add section 505(d) interest and section 512(a) penalties under CASPA.

We first recognize that a trial court may mold a jury verdict to include interest owed, even when the issue is not submitted to the jury. *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572 (Pa. Super. 2003). This Court also has the authority to mold the verdict by adding interest that is due. *See Berkeley Inn, Inc. v. Centennial Ins. Co.*, 422 A.2d 1078 (Pa. Super. 1980). Moreover, a trial court may mold a verdict to include prejudgment interest even after an appeal has been taken. *See Metropolitan Edison Co. v. Old Home Manor, Inc.*, 482 A.2d 1062, 1065

(Pa. Super. 1084); **see also** Pa.R.A.P. 1701(b)(1). The power to mold or, more precisely, amend a jury's verdict is merely a power to "make the record accord with the facts, or to cause the verdict to speak the truth," 6 Standard Pennsylvania Practice, **supra**, Ch. 27, § 72 at 568, and not a power to enable a judge to invade the province of the jury. **House of Pasta, Inc. v. Mayo**, 449 A.2d 697, 702 (Pa. Super. 1982) (citation omitted).

Again, Sea-Z never objected to the issue regarding how the jury award was broken down, either after the jury returned its verdict or before the jury was dismissed. Sea-Z could have requested a special interrogatory delineating exactly what part was considered due and owing under the parties' contract, the amount of delay damages, the amount properly retained under the contract, and the amount withheld in bad faith. If it had objected prior to dismissal of the jury, the court could have re-instructed the jury to state exactly how to apportion the verdict for purposes of sections 505 and 512 and, thus, enabled the jury to clarify its verdict. **Picca**, **supra**; Pa.R.C.P, 227.1(b)(1). Thus, despite the fact that Sea-Z later filed post-trial motions, the claim is waived. **Tyus**, **supra**.

In its next issue, Sea-Z contends that the court erred in molding the verdict when it computed interest and penalties[9] under CASPA without first deducting or setting-off the jury's award of $58,000.00 in favor of Sea-Z.[10]

A contractor is entitled to recover statutory interest under CASPA as follows:

> (d) INTEREST.— Except as otherwise agreed by the parties, if any progress or final payment to a contractor is not paid within seven days of the due date established in subsection (c), the owner shall pay the contractor, beginning on the eighth day, interest at the rate of 1% per month or fraction of a month **on the balance that is at the time due and owing.**

73 P.S. § 505(d) (emphasis added). Moreover, section 512 of CASPA mandates an award of penalties against an owner who fails to comply with the CASPA when:

> (a) Penalty for failure to comply with act.--**If** arbitration or **litigation is commenced to recover payment due under this act and it is determined that an owner**, contractor or

---

[9] The court calculated the interest and penalties based on the contract balance of $123,879.70 at 1% per month from years 2011-2015, at a 12% per year interest rate, for a total of 1,601 days, to come to a figure of $65,204.88 in interest on past due payments and penalties on the wrongfully withheld payments. **See** IMC's Post-Trial Motion to Mold Verdict, 11/13/15, at 6.

[10] The fact of whether a party withholds funds in good faith is relevant to a determination of whether a party is entitled to statutory interest and penalties under CASPA. **Waller Corp. v. Warren Plaza, Inc.**, 95 A.3d 313 (Pa. Super. 2014), *alloc. granted in part*, 108 A.3d 29 (Pa. 2015). CASPA mandates the award of a penalty upon a showing that a payment was "wrongfully withheld." 73 P.S. § 512(a). Absent good faith withholding, interest continues post-award at the statutory rate until payment. **Zimmerman v. Harrisburg Fudd I, L.P.**, 984 A.2d 497 (Pa. Super. 2009).

> subcontractor **has failed to comply with the payment terms of this act, the** arbitrator or **court shall award**, in addition to all other damages due, **a penalty equal to 1% per month of the amount that was wrongfully withheld**. An amount shall not be deemed to have been wrongfully withheld to the extent it bears a reasonable relation to the value of any claim held in good faith by the owner, contractor or subcontractor against whom the contractor or subcontractor is seeking to recover payment.

73 P.S. § 512(a) (emphasis added).

Pursuant to sections 505(d) and 512(a), IMC is entitled to recover interest on the "balance that was due and owing" under the parties contract, as well as a penalty on the "amount that was wrongfully withheld." Here, the court did exactly that when it imposed interest and a penalty equal to 1% per month on $123,897.70, the amount alleged to have been wrongfully withheld by Sea-Z. IMC was due the balance under the contract, that was not withheld in good faith by Sea-Z, and the interest and penalties should be calculated off of that amount. To off-set the $58,000.00 that Sea-Z recovered in its non-CASPA breach of contract claim would dilute the intent of CASPA's interest and penalty provisions and provide a benefit to Sea-Z where the jury determined that Sea-Z did not withhold the funds in good faith.[11]

_____

[11] In fact, the trial court properly instructed the jury that:

> [T]he appropriate measure of plaintiff's direct damages for breach is the reasonable cost of completing the contract and correcting any defective work *minus the unpaid balance of the contract price.*

*(Footnote Continued Next Page)*

In its final related, three issues, Sea-Z contends that the trial court erred in molding the verdict to include attorneys' fees and expenses under CASPA where it: (1) incorrectly found that IMC was the "substantially prevailing party"; (2) failed to determine a reasonable amount of fees; and (3) included the fees incurred by IMC in defending Sea-Z's counterclaim.

Under CASPA, a party is entitled to attorneys' fees and expenses as follows:

> (b) AWARD OF ATTORNEY FEE AND EXPENSES.— Notwithstanding any agreement to the contrary, the substantially prevailing party in any proceeding to recover any payment under this act shall be awarded a reasonable attorney fee in an amount to be determined by the court or arbitrator, together with expenses.

73 P.S. § 512(b). A "prevailing party" is commonly defined as:

> [A] party whose favor a judgment is rendered, regardless of the amount of damages awarded. While this definition encompasses those situations where a party receives less relief than was sought or even nominal relief, its application is still limited to *those circumstances where the fact finder declares a winner and the court enters judgment in that party's favor.*

***Zavatchen v. RJF Holdings, Inc.***, 907 A.2d 607, 610 (Pa. Super. 2006) (emphasis added) (quoting ***Profit Wize Mkts. v. Weist***, 812 A.2d 1270, 1275-76 (Pa. Super. 2002) (internal citations omitted). To qualify as a *substantially* prevailing party under CASPA, a party need not only recover on

*(Footnote Continued)* ————————————

N.T. Non-Jury Trial, at 11/5/15, at 98-99.

its claim, but also prove the opposing party, without good faith reason, failed to comply with the mandate of prompt payment. ***Zimmerman***, ***supra***. ***See Zavatchen***, ***supra*** at 609 ("substantially prevailing inquiry does not "turn[] on a simple mathematical comparison of the parties' respective recoveries" or "simply because a party won a net judgment.").

Here, IMC recovered $124,280.95, relatively the exact amount it sought ($123,897.70) under CASPA, representing the unpaid balance of the parties' contract. Moreover, in addition to finding that Sea-Z breached its contract with IMC, the jury also determined that Sea-Z did not withhold funds in good faith. ***Cf. LBL Skysystems (USA), Inc. v. APG-America, Inc.***, 514 F. Supp. 2d 704 9E.D. Pa. 2007) (where subcontractor prevailed on breach of contract counterclaim against contractor, because contractor *rightfully* withheld over $4,000,000.00 due to pending costs to complete project, subcontractor was not "substantially prevailing party" for purposes of recovering attorneys' fees under section 512(b) of CASPA). Therefore, the court properly awarded IMC attorneys' fees under section 512(b) where IMC filed suit in "a proceeding to recover" payment under CASPA; the jury found that Sea-Z failed to comply with CASPA's mandate of prompt payment. IMC was entitled to recover attorneys' fees and expenses incurred in connection with its CASPA litigation. ***Lomas v. Kravitz***, 130 A.3d 107 (Pa. Super. 2015) (en banc).

The question still remains, however, whether IMC is also entitled to recover attorneys' fees and expenses associated with defending against Sea-

Z's breach of contract counterclaim, a claim not brought within the ambit of CASPA. As both parties acknowledge, Sea-Z could have brought this contract claim independent of the current CASPA litigation commenced by IMC. *See* Sea-Z Cross Post-Trial Motion at ¶ 36; IMC Post-Trial Motion, at 2, 5 ("[T]he amounts awarded to Sea-Z on its independent counterclaim are irrelevant for determining the amount of interest and penalties calculated under CASPA.").

In ***Zimmerman***, our Court noted that "CASPA's underlying objective of making an unpaid contractor whole again by awarding him his litigation costs when he is the substantially prevailing party is compromised, and, indeed, can be gutted, when he is subjected to expensive litigations costs." *Id.* 984 A.2d at 505. In ***Zimmerman***, the contractor was also saddled with costs incurred in a collection-of-fees phase of litigation. *Id.* However, the court concluded that the contractor was entitled to a "reasonable attorney fee and expenses for the collection-of-judgment and the collection-of-fees periods." *Id.* at 506-507.

Here, while IMC is entitled to attorneys' fees on his successful CASPA verdict as a substantially prevailing party, we come to a different conclusion with regard to the fees IMC expended in defending Sea-Z's non-CASPA counterclaim. Because the jury determined that IMC breached its contract with Sea-Z, it rendered Sea-Z a verdict of $58,000.0. Accordingly, we cannot conclude that IMC prevailed, let alone "substantially" prevailed, on the counterclaim. As such, Sea-Z is entitled to have the amount of

attorneys' fees and expenses awarded to IMC offset by the amount of fees and expenses paid out to defend against the counterclaim; IMC is not entitled to section 512(a) statutory attorneys' fees on the counterclaim.[12] *See Zelenak v. Mikula*, 911 A.2d 542, 545 (Pa. Super. 2000) ("The plain meaning of 'prevailing part' is the party who wins the lawsuit."). Here, Sea-Z was clearly the verdict winner in its breach of contract counterclaim where the court found that IMC breached the contract and judgment was entered in Sea-Z's favor. *Profit Wize*, *supra*.

Accordingly, we remand for a hearing on the issue of attorneys' fees where the trial court shall determine what a "reasonable" fee is under section 512 of CASPA, notwithstanding the fees expended in defending Sea-Z's counterclaim. *See* 73 P.S. § 512(b). IMC must submit supporting documentation to substantiate the reasonable amount of fees incurred solely in litigating its CASPA claim. *See Ruthrauff, Inc. v. Ravin, Inc.*, 914 A.2d 880 (Pa. Super. 2006) (where contractor unreasonably withheld retainage under section 509 of CASPA, remand necessary to determine correct amount

---

[12] It is well established that costs inherent in a law suit are awarded to and should be recoverable by the prevailing party. *DeFulvio v. Holst*, 362 A.2d 1098 ((Pa. Super. 1976). Here, IMC cannot be considered a prevailing party on Sea-Z's counterclaim where the jury found that it breached its contract with Sea-Z and awarded it damages on the breach. It, then, follows that IMC cannot be considered a *substantially* prevailing party on Sea-Z's counterclaim, an even higher threshold, under CASPA.

of attorneys' fees and costs under section 512 as substantially prevailing party).

Order affirmed in part; reversed in part. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/4/2017